**HARTFORD CASUALTY INSURANCE COMPANY, Appellant,**

v.

**George Robert MORTON, Appellee.**

No. 12–03–00015–CV.

Court of Appeals of Texas,
Tyler.

March 24, 2004.

Rehearing Overruled May 3, 2004.

Charles J. McGuire III, McGuire, Craddock & Strother, Dallas, for appellant.

William T. McGee, Fort Worth, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and DeVASTO, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Hartford Casualty Insurance Company ("Hartford"), in its capacity as a surety, appeals a summary judgment granted in favor of George Robert Morton ("Morton"), in his capacity as independent executor of the estate of James McNeal Clark, in the amount of $73,492.06. In two issues, Hartford contends the probate court erred in granting Morton's motion for summary judgment and denying its own. We affirm.

### BACKGROUND

In 1992, James McNeal Clark ("Clark") made a will naming Morton as the sole devisee and also naming Morton as the independent executor of his estate.[1] In August of 1997, Clark's son, Larry Land ("Larry"), filed an application in the Tarrant County probate courts to be appointed as Clark's temporary guardian.[2] Larry's application was denied because he is a convicted felon. In May of 1998, attorney

---

1. At oral argument, it was explained Morton was Clark's long-time friend and neighbor.

2. At oral argument, it was revealed that Larry was Clark's adopted son.

Roger S. Jones ("Jones") filed an application in Tarrant County Probate Court Number Two ("Probate Court #2") requesting that Sharon Land ("Sharon") be appointed Clark's temporary guardian.[3] Sharon was married to Larry and was therefore Clark's daughter in law. On May 21, 1998, the Probate Court #2 entered an order appointing Sharon as Clark's temporary guardian and stating thirty specific powers that Sharon possessed as temporary guardian (the "May 21 order"). Power number 26 was the power "[t]o pay all bills, including insurance premiums, and make any and all reasonable and necessary expenditures from the estate." At the same time, the court appointed Peter H. Keim ("Keim") as Clark's attorney ad litem.[4] One week later, on May 28, the court entered an order extending the temporary guardianship (the "May 28 order"). The powers listed in the May 28 order were identical to those in the May 21 order. Keim questioned Jones specifically about the language of enumerated power number 26 because it did not seem to be limited. Jones told him that this was standard language, that he would explain it to Larry and Sharon, and that any expenditures from Clark's estate would require a further court order. On July 16, Jones told Keim that Clark had terminal cancer and did not have long to live. Keim did not want to incur any unnecessary attorney's fees and, therefore, he was not active in the case for several months after his conversation with Jones.

On November 11, Clark's eighty-fifth birthday, the Gardens Care Nursing Home contacted Keim about Clark. Keim then telephoned Sharon about Clark's situation. During their conversation, Sharon told Keim about improvements made to Clark's house located at 4020 Ryan Avenue in Fort Worth. Keim wanted to see the improvements because he had not seen any orders from the court permitting an expenditure of funds and from what Sharon told him, he believed significant construction had been performed on Clark's house. On November 12, Keim visited Clark's house. Larry and Sharon, who were living in the house, gave Keim a tour and even showed him a photo album documenting all stages of the remodeling. During the tour, they also showed Keim a new computer and a parrot. Keim was shocked by what he had been shown and immediately phoned Jones in the presence of Larry and Sharon. Sharon began crying and Larry became angry, making negative comments about Jones. The next day, Keim sent Jones the following letter:

November 13, 1998

Mr. Roger S. Jones, P.C.

Attorney At Law

2263 8th Ave.

Fort Worth, Texas 76110–1896

**Re: James McNeal Clark Guardianship**

Dear Mr. Jones:

In July of this year, you informed me that you had been told that Mr. Clark had cancer, and that you thought it might be terminal. As a result, you suggested that there may not need to be a permanent guardianship hearing, and that we await the developments on Mr. Clark's health.

After waiting for several months, I decided yesterday to visit Mr. Clark and the temporary Guardian to get an up-

---

3. Jones was certified by the Texas Board of Legal Specialization in Probate and Estate Planning in 1995.

4. At oral argument, Morton's attorney represented that his client had attempted to become involved in Clark's guardianship proceedings, but had been prevented from doing so by the probate court.

date on the status of Mr. Clark and his estate. Unfortunately I was not able to visit with Mr. Clark or review his medical records due to an overly cautious administration at the nursing home. This is a matter that I would ask for your assistance. If you could talk with the nursing home and straighten this out I would appreciate it.

I did, however, find out from Sharon and Larry Land that Mr. Clark is not, in fact, suffering from cancer, nor is he terminal. Unfortunately, when I visited with Sharon and Larry, I found out that they had expended a substantial amount of Mr. Clark's money on the refurbishing of Mr. Clark's house. While some of the repairs were no doubt necessarily performed in the reasonable maintenance of Mr. Clark's home, much of the work that was done would not, in my view, qualify as reasonable or necessary.

As I understand it, the Lands spent around $30,000.00 from Mr. Clark's account on these repairs without the prior approval of the Court, and certainly without my knowledge. This, of course, may create some serious difficulties for your clients. Their response to me was that they were advised by you that the Court had preapproved this work. They also said that the reason for this expenditure was so that they would "spend down" Mr. Clark's estate in order to qualify him for medicaid, and to set up a "Miller" trust. They informed me that their actions were directed by you, and that they only acted under your advise[sic]. Whether this is the case or not, I am not going to speculate. I will leave that for the court.

Since the Nursing home will not let me talk with Mr. Clark, I am unable to ask him for his opinion on this matter. However as his attorney, and until further developments in this case, I wait to register my objection to the actions of your clients, and request that you advise them that they are not to spend anymore of Mr. Clark's money unless and until I have had the opportunity to voice my objections, if any, and the Court has approved same.

As I understand it from speaking with the Lands, Mr. Clark's bank account has been reduced from over $90,000.00, per the last submitted inventory, to approximately $2,000.00. To my belated knowledge, a substantial part of this amount has not been approved by the Court. While the value of Mr. Clark's home has, no doubt, been increased, I am not qualified to evaluate the present value of the home. As a result, I do not know the true state of Mr. Clark's present estate.

Therefore, I am requesting that you provide me with an itemized list of all funds, from Mr. Clark's estate, that were expended by your clients since the granting of the temporary guardianship in Sharon Land, including copies of the receipts in connection thereto, and any bid proposals that were submitted for any work. I would also like an updated inventory showing the current state of Mr. Clark's estate, and a copy of all bank statements for Mr. Clark from the inception of the temporary guardianship. If there are any Court orders permitting the expenditures of funds, I would like a copy of these as well.

I understand that you are going to file a motion with the Court to ratify the expenditures to date after you have spoken with your clients on the 18th of this month. I would like to have the above requested documents well in advance of the hearing on your motion, so I would appreciate your prompt response to my requests. I know this will all take some time. However, in order to preserve what remains of Mr. Clark's estate, and to complete this guardianship, I would

like to have this matter expedited as much as is reasonably practicable.

Please let me know at your earliest [convenience] whether or not you have any objection to this informal discovery request. I will do what I can to work these matters out in a mutually agreeable way. I would also ask that you call the nursing home to get their cooperation with me before I resort to the Court.

Sincerely,

/s/

Peter H. Keim

/pk

On January 6, 1999, Jones provided Keim with an itemized list of expenditures which Sharon had prepared. The next day, January 7, Keim filed an emergency motion for Sharon's removal as temporary guardian because of the wasting of Clark's estate and requested the appointment of a successor temporary guardian. On January 8, Probate Court #2 appointed Tom Henry ("Henry") as guardian ad litem. On February 3, 1999, Henry filed an emergency motion to remove Sharon as the temporary guardian of Clark's estate. On February 11, Sharon filed a resignation as temporary guardian of Clark's estate. On February 22, 1999, the probate court entered an "Agreed Order Accepting Resignation of Personal Representative and Appointing Successor." This order specifically stated, in part, as follows:

4. That effectively immediately, *Tom Henry*, an attorney licensed to practice before this Court and in all courts of the State of Texas, should be appointed to serve as Successor Temporary Guardian of the Estate of James McNeal Clark, after posting a corporate or personal bond in the amount of *$2,000.00*, and otherwise qualifying in accordance with law;

. . . .

IT IS, THEREFORE, ORDERED ADJUDGED AND DECREED by the Court that Sharon Land should be, and is hereby, permitted to resign, effective immediately, from her capacity as Guardian of the Estate; provided, however, that Sharon Land shall not be discharged, and her surety shall not be released, until any deficiency determined in connection with the Final Accounting to be filed herein is satisfied; . . . .

On April 6, 1999, Sharon filed her account for final settlement. On April 14, Henry, as successor temporary guardian of Clark's estate, filed his objections to Sharon's account. Henry complained that Sharon had made unauthorized expenditures from Clark's bank accounts, which were worth $90,774.57 at the time of her appointment as temporary guardian, and had left a balance of $1,700.00. Specifically, Henry alleged that, without court approval, Sharon had remodeled Clark's house; purchased a 1996 Jeep Cherokee with a number of extras, a new computer with peripherals, a parrot for over $1,000.00, and a utility trailer; paid personal living expenses; and even made gifts to charities. On April 29, Sharon filed a first amended account for final settlement. Henry objected to this amendment on May 5.

On June 7, 1999, Clark died. A will contest ensued. On August 27, 2000, the Tarrant County Probate Court Number One ("Probate Court #1") entered an order on the account for final settlement Henry had filed as the successor temporary guardian of Clark's estate. The order approved the account and discharged Henry. The order then stated that the remaining guardianship assets would not be delivered to anyone until the will contest was resolved. On November 15, 2000,

Clark's will was finally admitted to probate and Morton took his oath of office as independent executor of the estate.

On February 14, 2001, Morton sued Sharon in Probate Court # 1 for her unauthorized expenditure of funds from Clark's guardianship estate. Sharon filed a counterclaim in November of 2001 against Morton, both individually and as independent executor of Clark's estate, seeking $78,408.00 for her nursing care of Clark. Morton moved for a summary judgment against Sharon in the amount of $78,492.06 for her unauthorized expenditures. Hartford, as surety on Sharon's guardianship bond, filed a motion for partial summary judgment asking the court to determine that as a matter of law Sharon had the authority to expend Clark's funds. As support for its motion, Hartford relied on provision number 26 in the May 21 and May 28 orders, which stated that Sharon had the authority "[t]o pay all bills, including insurance premiums, and make any and all reasonable and necessary expenditures from the estate." In the alternative, Hartford pleaded that Sharon's expenditures were reasonable and necessary. Hartford made the same allegations in its response to Morton's motion for summary judgment.

On August 5, Probate Court # 1 entered a partial summary judgment granting Morton's motion for summary judgment and awarding Morton $73,496.06 along with post-judgment interest and court costs. The order denied Hartford's motion for partial summary judgment. Sharon's counterclaim for $78,408.00 was set by the court to be tried as an independent cause of action on September 9, 2002. On August 23, 2002, Larry and Sharon filed a chapter 13 petition with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth division. On November 25, 2002, after the bankruptcy stay was lifted, the Probate Court # 1 severed the partial summary judgment in favor of Morton making it a final judgment as of that date. Hartford then timely filed its notice of appeal from Morton's partial summary judgment.

### STANDARD OF REVIEW

In a traditional motion for summary judgment, we apply the following rules in reviewing a summary judgment record:

> 1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.
>
> 3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioner's Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). In so doing, we first review the order granting summary judgment. *See Tobin v. Garcia,* 159 Tex. 58, 64, 316 S.W.2d 396, 400 (1958). We review the trial court's action in overruling the denied motion only if we determine the order granting summary judgment was erroneous. *See id.*

### MORTON'S MOTION FOR SUMMARY JUDGMENT

In its first issue, Hartford contends that the trial court erred in granting Morton's motion for summary judgment. In its sec-

ond issue, Hartford contends that the trial court erred in denying its own motion for partial summary judgment. More particularly, Hartford contends the trial court made an error of law because Sharon had the authority under the court's May 21 and May 28 orders to make any expenditure that was reasonable and necessary without further order of the court. We therefore consider Hartford's two issues together.

*Authority of Guardian to Spend Corpus of Estate*

An adult individual is incapacitated when, because of a physical or mental condition, the individual is substantially unable to provide food, clothing, or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs. TEX. PROB.CODE ANN. § 601(14)(B) (Vernon 2003). A ward is an incapacitated person for whom a guardian has been appointed. *See* TEX. PROB.CODE ANN. § 601(31) (Vernon 2003). A guardian is a statutory office appointed by the probate court to guard the interests of his ward and to provide for his education and maintenance. *Decker v. Wiggins,* 421 S.W.2d 189, 192 (Tex.Civ. App.-Fort Worth 1967, no writ). The purpose of a temporary guardianship is to promote and protect the wellbeing of a person who may be incapacitated. *See* TEX. PROB.CODE ANN. §§ 602 (Vernon 2003), 875 (Vernon Supp.2004); *see also Overman v. Baker,* 26 S.W.3d 506, 509 (Tex. App.-Tyler 2000, no pet.).

A guardian's powers and duties on behalf of a ward are found in the Texas Probate Code. *See Decker,* 421 S.W.2d at 192. Guardianships are also governed by the laws and rules in the Texas Probate Code that apply to decedents' estates. TEX. PROB.CODE ANN. § 603(a) (Vernon 2003). The Probate Code creates two types of administrations for decedents' estates. In an independent administration, the will is probated, an order appointing an independent executor is entered by the probate court, and an inventory, appraisement, and list of claims is filed by the executor. *See* TEX. PROB.CODE ANN. § 145(h) (Vernon 2003). After the inventory, appraisement, and list of claims is approved by the probate court, no other court action is necessary. *See id.* On the other hand, an administrator in a dependent administration must receive prior court approval of the actions taken in administering the estate unless otherwise provided by statute. *See, e.g.,* TEX. PROB.CODE ANN. §§ 234(a), 331 (Vernon 2003); *but see, e.g.,* TEX. PROB.CODE ANN. §§ 234(b), 359 (Vernon 2003) (specifying certain actions that may be taken without court order). Section 234 of the Probate Code specifies the powers that an administrator in a dependent administration can exercise with and without court order. *See* TEX. PROB.CODE ANN. § 234 (Vernon 2003). These are virtually the same powers that a guardian can exercise with and without specific court authority as enumerated in Texas Probate Code section 774. *See* TEX. PROB.CODE ANN. § 774 (Vernon Supp.2004). It is therefore apparent that a guardianship is intended to be similar to a dependent administration rather than an independent administration.

Hartford contends that the court's order allowing Sharon to "make any and all reasonable and necessary expenditures" from the estate was all the authority she needed from the probate court to spend the corpus of Clark's estate. As support for its argument, Hartford refers us to Section 876 of the Texas Probate Code which in part states that "[t]he order shall be evidence of the temporary guardian's authority to act within the scope of the powers and duties set forth in the order." TEX. PROB. CODE § 876 (Vernon 2003). Hartford has also pointed us to numerous statements by

Sharon indicating that she believed power number 26 in the May 21 and May 28 orders of the probate court allowed her to make expenditures from the corpus of Clark's estate that she thought were necessary.

Morton responds that the provisions of the Probate Code which apply to permanent guardianships also apply to temporary guardianships. *See* TEX. PROB.CODE § 877 (Vernon 2003). Specifically, Morton contends that only section 774(b) specifies what the guardian of an estate may do without a previous court order. That section states as follows:

(b) The guardian of the estate of a person, without application to or order of the court, may exercise the following powers provided, however, that a guardian may apply and obtain an order if doubtful of the propriety of the exercise of any such power:

(1) release a lien on payment at maturity of the debt secured by the lien;

(2) vote stocks by limited or general proxy;

(3) pay calls and assessments;

(4) insure the estate against liability in appropriate cases;

(5) insure property of the estate against fire, theft, and other hazards; and

(6) pay taxes, court costs, and bond premiums.

TEX. PROB.CODE ANN. § 774(b) (Vernon Supp.2004).

It has long been the established law in Texas that before a guardian is entitled to spend money from the corpus of the estate for the maintenance, education and support of his ward, he must first procure an order from the court authorizing such expenditure. *Pemberton v. Leatherwood,* 218 S.W.2d 500, 504 (Tex.Civ.App.-Eastland 1949, writ ref'd n.r.e.). It is clear from sections 774 and 776 of the Probate Code that this long-established procedure still applies, although with certain specified exceptions. After written application to the probate court, the guardian may, if authorized by a court order, purchase or exchange property, take a claim or property for the use and benefit of the estate in payment of a debt due or owing to the estate, compound a bad or doubtful debt due or owing to the estate, make a compromise or settlement in relation to property or a claim in dispute or litigation, compromise or pay in full secured claims, abandon worthless or burdensome property, or purchase a prepaid funeral benefits contract. TEX. PROB.CODE ANN. § 774(a) (Vernon Supp.2004). Section 776(a) authorizes a guardian to expend the net income of the estate for the ward's education and maintenance without court order. TEX. PROB.CODE ANN. § 776(a) (Vernon 2003). However, a guardian may not expend corpus unless directed to do so by the court. *See id.* Section 776(b) creates an exception to the general rule and allows a guardian to expend corpus when it is not convenient or possible for the guardian to first secure court approval. *See* TEX. PROB. CODE ANN. § 776(b) (Vernon 2003). However, that authorization is limited to $5,000.00 per ward during an annual accounting period, unless the expenditure is made to a nursing home in which case the court may ratify any amount. *Id.* Furthermore, the court can ratify these expenditures only upon clear and convincing proof of the circumstances specified in the statute. *Id.*

 A court may confer upon a party only such powers as are authorized by the constitution or by statute. *See Goodman v. Summit at West Rim, Ltd.,* 952 S.W.2d 930, 933 (Tex.App.-Austin 1997, no writ). Furthermore, the authority of a probate court cannot be enlarged by a request

from a guardian that the court exceed its powers. *See Burke v. Satterfield,* 525 S.W.2d 950, 953 (Tex.1975). Therefore, in light of the limitations of Section 776(b), the probate court could not preauthorize an unlimited expenditure of corpus for Clark's reasonable and necessary expenses during the only annual accounting period in which Sharon was temporary guardian. *See* TEX. PROB.CODE ANN. § 776(b). Consequently, the May 21 and May 28 orders did not authorize Sharon to spend tens of thousands of dollars out of the corpus of Clark's estate without first securing specific court approval. *Id.* We hold that a temporary guardian does not have authority under the Probate Code to make reasonable and necessary expenditures out of the corpus of a ward's estate without first securing written approval of the probate court except as provided in Section 776(b).

### Reasonable and Necessary Expenses

Hartford contends that the probate court could not enter a summary judgment in favor of Morton because Hartford was entitled to have a fact finder determine which of Sharon's expenditures were reasonable and necessary.

As we have noted before, when a guardian has not received prior court approval for expenditures from corpus, a trial court can ratify expenditures for reasonable and necessary expenses in an amount not exceeding $5,000.00 per accounting period. TEX. PROB.CODE ANN. § 776(b). Here, Morton initially sought to have the court determine that Sharon did not have authority to spend $78,492.06 of the corpus of Clark's estate. However, in entering his order, Visiting Probate Judge Mike Wood stated that he was allowing the maximum $5,000.00 for Sharon's expenditures during her only annual accounting period as temporary guardian and that the judgment would be for $73,492.06 rather than the full amount sought. Hartford's only response, other than the fact that Sharon had authorization by reason of the May 21 and May 28 orders, was that her expenditures from the corpus of Clark's estate had been reasonable and necessary. Because the court allowed the maximum amount of reasonable and necessary expenses that it could under the Probate Code, Hartford was not entitled to any further determination by a fact finder. *See* TEX. PROBATE CODE ANN. § 776(b).

Hartford also contends that the summary judgment evidence shows that part of the $73,492.06 awarded in the judgment was actually from the income of Clark's estate and therefore could be spent by Sharon without court authorization. *See* TEX. PROB.CODE ANN. § 776(a). However, Hartford did not present this issue to the probate court before the hearing on the summary judgment. A nonmovant must now, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 679 (Tex.1979). Hartford also contends that a portion of the $73,492.06 judgment included nursing home expenses which may be ratified by the probate court in any amount. *See* TEX. PROB.CODE ANN. § 776(b). Again, this argument fails because ratification was not presented in a written answer or response to Morton's summary judgment motion or in its own summary judgment motion. *See Clear Creek,* 589 S.W.2d at 679.

### CONCLUSION

The trial court did not err in granting summary judgment in favor of Morton. Accordingly, Hartford's issues one and two are overruled. Having overruled Hart-

ford's two issues, the judgment of the trial court is *affirmed*.