# NO. 12-07-00314-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CENTRAL MUTUAL INSURANCE COMPANY d/b/a CENTRAL INSURANCE COMPANIES AND CMI LLOYDS, APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *KPE FIRSTPLACE LAND, LLC, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Central Mutual Insurance Company d/b/a Central Insurance Companies ("Central Mutual") and CMI Lloyds ("Lloyds") (collectively "Central") appeal the trial court's summary judgment entered in favor of Appellee KPE Firstplace Land, LLC ("KPE") as well as the trial court's denial of Central's motion for summary judgment. In two issues, Central argues that the trial court erred in granting partial summary judgment in KPE's favor against Lloyds and denying its motion for summary judgment. We affirm.

## BACKGROUND[1]

On December 29, 2004, KPE purchased real estate located on Loop 323 in Tyler Texas. KPE also owned a 90,000 square foot building located on the property. At some time prior to

_____

[1] This case was submitted to the trial court on joint stipulations of fact. *See* TEX. R. CIV. P. 263.

December 31, 2005,[2] thieves removed the copper coils from the air conditioning equipment located on the roof of the building, which caused the air conditioning equipment to become damaged. KPE discovered the damaged air conditioning equipment on December 31, 2005 and reported the loss to the Tyler Police Department that same day. KPE's insurance agent, Bosworth & Associates, reported the loss to Central on February 13, 2006.

At the time KPE discovered the damage to its air conditioning equipment, the property was insured through a policy issued by Lloyds and effective through September 15, 2006. The policy contains a provision entitled "Loss Conditions," which states, in pertinent part, as follows:

**6.    Vacancy**

**a.** Description of Terms

**1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in 1) a) and 1) b) below:

**a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

---

[2] The stipulation does not expressly address the date on which the air conditioning unit became damaged by theft. It does, however, state that KPE discovered the loss on December 31, 2005 and that the loss was reported to Central on February 13, 2006. In its motion for partial summary judgment, KPE noted that neither party can demonstrate the date upon which the air conditioning unit became damaged and argued that it was entitled to summary judgment because Central could not meet its burden of proof as to the applicability of the vacancy exclusion. *See* TEX. INS. CODE ANN. § 554.002 (Vernon Supp. 2008) (In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense including any language of exclusion in the policy and any exception to coverage claimed by the insurer). In its motion for summary judgment, Central responded to KPE's position concerning the date of the theft and contended that the argument must fail because loss, for insurance purposes, is deemed to occur when it manifests itself or is discovered. Considering the aforementioned statements in the parties' stipulation in conjunction with both KPE's argument that neither party knows when the theft took place and Central's contention that KPE's position must fail because of the application of the manifestation rule, we conclude that it is necessarily implied from the express facts in the stipulation and the argument of the parties' respective counsel that the date on which the theft took place is unknown to either party.

2

**ii)** Used by the building owner to conduct customary operations.

**2)** Buildings under construction or renovation are not considered vacant.

**b.** Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**a)** Vandalism;
**b)** Sprinkler leakage, unless you have protected the system against freezing;
**c)** Building glass breakage;
**d)** Water damage;
**e)** Theft; or
**f)** Attempted theft.

KPE's property had been "vacant" as that term is defined in the aforementioned policy section for more than sixty consecutive days at the time the loss was discovered on December 31, 2005. On or about March 6, 2006, KPE's claim was denied. On or about June 5, 2006, KPE, through its attorneys, made another formal demand for payment of the loss. After receiving KPE's demand, Lloyds took the examination under oath of KPE's representative, Kevin Eltife, and attempted to reach a settlement of the matter with KPE. When the parties were not able to settle the matter, on or about October 5, 2006, Appellants sent a letter to KPE's attorney rejecting the June 5, 2006 demand for payment of the loss.

KPE filed the instant lawsuit on October 25, 2006 seeking recovery for breach of contract, unfair settlement practices,[3] and failure to comply with the prompt payment statute.[4] Both parties subsequently moved for summary judgment on agreed facts.[5] In its motion for summary judgment, KPE argued that Central could not prove that its claim was excluded under the "Vacancy" clause

---

[3] *See* TEX. INS. CODE ANN. § 541.060(a) (Vernon Supp. 2008).

[4] *See* TEX. INS. CODE ANN. § 542.058 (Vernon Supp. 2008).

[5] *See* n.1. KPE moved for partial summary judgment on its breach of contract claim against Central.

because it could not demonstrate that the property had been vacant for sixty days at the time the loss "occurred," i.e., the date on which the air conditioning equipment was damaged. To the contrary, in its motion for summary judgment, Central argued that the "Vacancy" clause excluded KPE's claim because the property had been vacant for sixty days at the time the loss "occurred," that is, the date on which the loss "manifest[ed] itself or [was] discovered." As part of their joint stipulation of facts, the parties agreed as follows:

> If the vacancy provision . . . does not apply, then Defendant [Lloyds] is obligated to pay KPE the amount of the Loss ($107,618.90), less the $1,000 deductible under the policy, plus interest on the amount due at the rate of 6% per annum from and after June 5, 2006 through the date of judgment. If the vacancy provision . . . does apply, then Defendant [Lloyds] is not obligated to KPE for the loss.

Ultimately, the trial court granted KPE's motion for partial summary judgment against Lloyds and denied Central's motion for summary judgment. Thereafter, upon KPE's motion, the trial court dismissed KPE's remaining extracontractual causes and entered a final judgment against Lloyds. This appeal followed.

## LIABILITY OF CENTRAL MUTUAL

As part of its first issue, Central argues that the trial court erred in granting summary judgment against Central Mutual because Central Mutual is not a party to the insurance contract involved in this matter. Based on our review of the record, neither the trial court's order granting partial summary judgment nor the trial court's final judgment grants relief in favor of KPE against any party other than Lloyds. As such, the error of which Central complains with regard to Central Mutual is not supported by the record.

## WHEN LOSS OR DAMAGE "OCCURS"

In the remainder of its first issue, Central argues that the trial court erred in granting summary judgment in KPE's favor. When competing motions for summary judgment are filed, and one is granted while the other is denied, we first review the order granting summary judgment. *See Hartford Cas. Ins. Co. v. Morton*, 141 S.W.3d 220, 225 (Tex. App.–Tyler 2004, pet. denied). If we

4

determine the order was erroneous, we review the trial court's action in overruling the denied motion. *Id.* We determine all questions presented and may reverse the trial court's judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *See Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988).

When parties to a lawsuit submit matters in controversy upon an agreed statement of facts, no evidence is admitted or considered by the trial court. *See Trevino & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39, 41 (Tex. App.–San Antonio 1997, no writ). Rather, the trial court's decision is based upon the papers on file and the arguments of counsel. *Id.* We indulge no presumptions in favor of the judgment in such a case because the trial court had no factual issues to resolve. *Id.* Moreover, the parties' pleadings are immaterial. *See State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.–Fort Worth 1996, writ denied). The only issue on appeal is whether the trial court properly applied the law to the agreed facts. *Id.* We review de novo whether the trial court correctly applied the law to the admitted facts. *See City of Corpus Christi v. Gomez*, 141 S.W.3d 767, 770 (Tex. App.–Corpus Christi 2004, no pet.). We are limited to those facts unless other facts are necessarily implied from the express facts in the statement. *Id.*

Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997); *Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co.*, 113 S.W.3d 37, 40 (Tex. App–Houston [1st Dist.] 2003, pet. denied). Accordingly, when a contract permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992); *Phillips Petroleum Co.*, 113 S.W.3d at 40. We must strive to effectuate the contract as the written expression of the parties' intent and must attempt to give effect to all contract provisions, so that none will be rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). To this end, we construe the terms of the contract as a whole and consider all of its terms, not in isolation, but within the context of the contract. *Beaston*, 907 S.W.2d at 433; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994); *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 274 (Tex. App.–Houston [1st Dist.] 2001, no pet.).

Whether a contract is ambiguous is a question of law for the court to decide by looking at the

5

contract as a whole in light of the circumstances present when the contract was entered. *Kelley-Coppedge, Inc.*, 980 S.W.2d at 464 (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). An ambiguity does not arise merely because the parties advance conflicting contract interpretations. *Kelley-Coppedge, Inc.*, 980 S.W.2d at 465. Only when, after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be considered ambiguous. *Id.*; *Phillips Petroleum Co.*, 113 S.W.3d at 40. Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows that parties intended a different meaning. *Gonzales v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990).

In the case at hand, the parties disagree about the meaning of the term "occurs" as it is used in the policy's vacancy provision. KPE argues that Central could not prove that its claim was excluded under the vacancy provision because it could not demonstrate that the property had been vacant for sixty days at the time the loss "occurred," that is the date on which the air conditioner became damaged. To the contrary, Central argues that the vacancy provision excluded KPE's claim because the property had been vacant for sixty days at the time the loss "occurred," that is, when the loss manifested itself or was discovered.

The Texas Supreme Court has recently considered the issue of when property damage occurs, when the same is not specified by the relevant policy, for purposes of an occurrence based commercial general liability insurance policy. *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 51 Tex. Sup. Ct. J. 1367, 2008 WL 3991187, at *1 (Tex. Aug. 29, 2008). In that case, the policy provided that property damage was covered only if such damage "occur[red] during the policy period."[6] *Id.*, at *2. The court noted that several Texas courts of appeals have followed the so called "manifestation rule," which triggers the insurer's responsibility only if the property damage becomes evident or discoverable during the policy term. *See id.*, at *3. However, the court declined to fashion or adopt a universally applicable manifestation rule noting that, in the case before it, the policy made no provision for it. *Id.*, at *4. The court elaborated as follows:

---

[6] The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

6

Whatever practical advantages a manifestation rule would offer to the insured or the insurer, the controlling policy language does not provide that the insurer's duty is triggered only when the injury manifests itself during the policy term, or that coverage is limited to claims where the damage was discovered or discoverable during the policy period.

. . . . Again, the policy provides coverage if the "'property damage' occurs during the policy period." The policy does not state that coverage is available if property is, during the policy period, exposed to a process, event, or substance that later results in . . . injury to tangible property.

. . . .

Pinpointing the moment of injury retrospectively is sometimes difficult, but we cannot exalt ease of proof or administrative convenience over faithfulness to the policy language; our confined task is to review the contract , not revise it. Our prevailing concern is not one of policy but of law, and we must honor the parties' chosen language. . . . The policy asks when the damage happened, not whether it was manifest, patent, visible, apparent, obvious, perceptible, discovered, discoverable, capable of detection, or anything similar. Occurred means when *damage* occurred, not when *discovery* occurred.

***Id.*** (emphasis in original). The court ultimately held that under the facts of that case, the property damage occurred when the home suffered damage. ***Id.***

The instant case concerns an exclusionary provision in a property insurance policy. Nonetheless, the court's analysis in ***Don's Bldg. Supply, Inc.*** is instructive. Here, the policy sets forth that Central will not pay for any loss or damage caused by vandalism or theft if the building where loss or damage occurs has been vacant for more than sixty consecutive days before that loss or damage *occurs*. The policy does not define the term "occur." As such, since there is no indication from the policy that the parties intended otherwise, we will give the term its ordinary and commonly understood meaning. *See **Gonzales***, 795 S.W.2d at 736.

The primary definition of "occur" is "[t]o take place" or "come about." THE AMERICAN HERITAGE DICTIONARY 860 (2nd College ed. 1982). However, a secondary meaning of "occur" is "[t]o be found to exist or appear." ***Id.*** We believe, however, that the ordinary and more commonly understood meaning of "occur" is "to take place." Such a meaning of occur is consistent with the entirety of the contract in the instant case.[7] Therefore, we conclude that, when the language of the

---

[7] Much like in ***Don's Bldg. Supply, Inc.***, 2008 WL 3991187, at *4, the policy in the instant case does not make any other suggestion that the damage be manifest, patent, visible, apparent, obvious, perceptible, discovered, discoverable, capable of detection, or anything similar.

instant contract is properly construed, damage "occurs" when the property becomes damaged.[8]  As such, considering the terms of the contract in light of the stipulated facts and those facts necessarily implied therefrom, we conclude that Central could not meet its burden of proof with regard to the exclusionary vacancy provision at issue.  Thus, we hold that the trial court properly applied the law to the agreed facts in granting summary judgment for KPE.

Central's first issue is overruled.


#### DISPOSITION

Having overruled Central's first issue, we *affirm* the trial court's judgment.[9]


  SAM GRIFFITH  
Justice

Opinion delivered November 26, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)

---

[8] We do not discount that the primary and secondary definitions of "occur" support the opposing positions of the parties.  THE AMERICAN HERITAGE DICTIONARY 860 (2nd College ed. 1982).  But even assuming arguendo, that the term "occur," in its common usage, is equally susceptible to these conflicting meanings and is, thus, ambiguous, the result would not change.  *See Urethane Intern. Products v. Mid-Continent Cas. Co.*, 187 S.W.3d 172, 176 (Tex. App.–Waco 2006, no pet.) (citing *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1994) ("[I]f a contract of insurance is susceptible to more than one reasonable interpretation, [courts] must resolve the uncertainty by adopting the construction most favorable to the insured."); *see also Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) ( "The Court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.").

[9] Having determined that the trial court properly granted summary judgment for KPE against Lloyds, we do not reach Central's second issue pertaining to the trial court's denial of its motion for summary judgment.