**PHILLIPS PETROLEUM COMPANY,**
Appellant,

v.

**ST. PAUL FIRE & MARINE INSUR-ANCE COMPANY and St. Paul In-surance Company, Appellees.**

No. 01–01–00462–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 21, 2003.

Rehearing Overruled July 11, 2003.

Andrew Patrick Tower, Howrey Simon Arnold & White, Ronald D. Krist, Houston, Mark I. Levy, Robert Jacobs, Howrey Simon Arnold & White LLP, Washington, D.C., for Appellant.

David E. Chamberlain, Chamberlain & McHaney, J. Hampton Skelton, Skelton, Woody, Arnold & Placek, Austin, for Appellees.

Panel consists of Chief Justice RADACK and Justices NUCHIA and JENNINGS.

## OPINION

TERRY JENNINGS, Justice.

In this insurance-coverage dispute, appellant, Phillips Petroleum Company (Phillips), challenges the trial court's rendition of summary judgment in favor of appellees, St. Paul Fire & Marine Insurance Company and St. Paul Insurance Company (together, St.Paul).[1] In two issues, Phillips contends that the trial court erred in granting summary judgment in favor of St. Paul and in denying Phillips's motion for reconsideration.

We affirm.

### Facts and Procedural Background

In July 1997, representatives of Phillips and H.B. Zachry Company (Zachry) exe-

---

1. Appellees contend that St. Paul Insurance Company was incorrectly named as a defendant below and is not a proper party to this lawsuit. We do not address this contention because it is not relevant to the disposition of this appeal.

cuted a Preferred Service Provider Alliance and Master Service Agreement (MSA), under which Phillips contracted to hire Zachry to perform maintenance and construction work at several Phillips facilities in Texas, Oklahoma, Utah, and Puerto Rico. As part of the terms of the MSA, Zachry agreed to obtain and maintain certain types of insurance coverage and to name Phillips as an additional insured on such policies. Zachry also agreed that any insurance policies that it obtained as required by the M.S.A. § would be written or endorsed to be primary to any other coverage available to Phillips. Zachry subsequently purchased a policy of insurance from St. Paul (the policy),[2] which provided several types of coverage and carried a bodily-injury liability limit of $1 million per event.

Following a June 1999 explosion at Phillips's Houston facility, injured Zachry employees and the estates of deceased Zachry employees sued Phillips, seeking, among other things, recovery of damages for injuries sustained in and deaths resulting from the explosion. Phillips subsequently demanded that Zachry's insurer, St. Paul, provide Phillips with a defense to these underlying lawsuits. St. Paul did so, subject to a reservation of its rights under the policy.[3] Phillips then sued St. Paul for breach of contract and sought a declaratory judgment that St. Paul owed Phillips an unlimited defense to the underlying lawsuits and indemnity up to the liability limits of the policy.[4]

St. Paul answered Phillips's suit with a general denial and filed a motion for summary judgment. St. Paul argued that, because the policy purchased by Zachry was a "fronting" policy (i.e., the amount of the deductible payable by the insured equaled the amount of the liability limits), and because Zachry was obligated to reimburse St. Paul for all claim expenses, including attorneys' fees, incurred in the defense of a claim under the policy, St. Paul owed no further obligation to Phillips once St. Paul expended $1 million in defending Phillips in the underlying lawsuits.[5]

The trial court granted an interlocutory summary judgment in favor of St. Paul and subsequently denied Phillips's motion for reconsideration. The court then severed its summary judgment into a separate cause, making its judgment final.

## Standard of Review

■ A party moving for summary judgment has the burden of proving that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548 (Tex.1985); *Farah v. Mafrige & Kormanik*, 927 S.W.2d 663, 670 (Tex.App.-Houston [1st Dist.] 1996, no writ). When a motion for summary judgment raises multiple grounds, we may affirm to the extent that any ground is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996). These standards apply in insurance-coverage cases. *See e.g., State Farm Fire & Cas. Co. v.*

2. We will refer to St. Paul's policy, numbered KK09100847, as "the policy." For purposes of this appeal, the parties do not dispute that Phillips is an additional insured under this policy and that the coverage provided by the policy is primary to other coverage available to Phillips.

3. The parties do not dispute that the policy was in effect at the time of the explosion.

4. Phillips also asserted separate claims against Zachry's excess insurance carriers, who are not parties to this appeal.

5. *St. Paul presented summary judgment evidence to show, and the parties do not dispute, that St. Paul expended $1 million in its defense of Phillips in the underlying lawsuits.*

*Vaughan,* 968 S.W.2d 931, 933 (Tex.1998); *Hanson v. Republic Ins. Co.,* 5 S.W.3d 324, 327 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

## Contract Interpretation

In its two issues, Phillips argues that the trial court erred in granting summary judgment for St. Paul and in denying Phillips's motion for reconsideration because Phillips, as an additional insured under the policy purchased by Zachry, was owed an unlimited defense by St. Paul against the underlying lawsuits until St. Paul "exhausted its policy's liability limits by indemnifying Phillips for damage payments." Phillips argues that the plain language of the policy is subject to this one, and only, reasonable interpretation. Alternatively, Phillips argues that any ambiguity in the policy with respect to the scope of St. Paul's defense obligations must be construed in Phillips's favor.

Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex. 1997); *Hanson,* 5 S.W.3d at 328. Accordingly, when a contract permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.,* 842 S.W.2d 631, 633 (Tex. 1992); *Hanson,* 5 S.W.3d at 328. We must strive to effectuate the contract as the written expression of the parties' intent and must attempt to give effect to all contract provisions, so that none will be rendered meaningless. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998); *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995). To this end, we construe the terms of the contract as a whole and consider all of its terms, not in isolation, but within the context of the contract. *Beaston,* 907 S.W.2d at 433; *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133–34 (Tex.1994); *Hartrick v. Great Am. Lloyds Ins. Co.,* 62 S.W.3d 270, 274 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Kelley–Coppedge,* 980 S.W.2d at 464 (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995)). An ambiguity does not arise merely because the parties advance conflicting contract interpretations. *Kelley–Coppedge,* 980 S.W.2d at 465. Only when, after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be considered ambiguous. *Id.*

Our review of the terms of an insurance policy may also, under certain circumstances, require review of the terms of a contract between the insured and a third party. As the Texas Supreme Court noted in *Urrutia v. Decker,* "Texas law has long provided that a separate contract can be incorporated into an insurance policy by an explicit reference clearly indicating the parties' intention to include that contract as part of their agreement." 992 S.W.2d 440, 442 (Tex.1999) (citing *Goddard v. East Tex. Fire Ins. Co.,* 67 Tex. 69, 1 S.W. 906, 907 (1886)).

A thorough review of the relevant provisions of the M.S.A. and the policy is necessary to determine whether the trial court erred in deciding the coverage dispute in favor of St. Paul.

### MSA Provisions

As noted above, under the MSA, Zachry was required to purchase insurance coverage naming Phillips as an additional insured. Exhibit "M" of the MSA, entitled

"Insurance Requirements," provides, in part, as follows:

> Zachry shall, at a minimum, maintain the following types and amounts of insurance and shall keep such insurance in force during the term of this Agreement.
>
> . . . .
>
> 3. Commercial General Liability Insurance on an occurrence form with a combined single limit of $1,000,000 per occurrence. . . .
>
> . . . .
>
> As a separate and additional obligation independent of the indemnities contained in the Agreement, all of the required insurance policies named above, shall be written or endorsed to name [Phillips], its subsidiaries and affiliates as additional insureds to the extent of Zachry's indemnity and other obligations under this Agreement.
>
> . . . .
>
> All of the required insurance policies named above shall be written or endorsed to be primary, with respect to Zachry's obligations, to any other coverage available to cover the loss.

The parties do not dispute that, as a result of the foregoing provisions, Zachry was contractually obligated to obtain a commercial general liability insurance policy that (1) named Phillips as an additional insured and (2) was written to be primary to any other coverage available to Phillips to cover the losses concerned in the underlying lawsuit.

### Policy Provisions

In its introductory section, the commercial general liability policy purchased by Zachry from St. Paul defines "you, your and yours" as the named insured, Zachry. In a section entitled "Who Is Protected Under This Agreement," the policy explains that, "[i]f you are named in the Introduction as a corporation or other organization, you are a protected person." In a section entitled "What This Agreement Covers," the policy provides that St. Paul agrees to "pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage" caused by an "event" [6] during the term of the policy.

The policy sets forth St. Paul's duty to defend its insureds as follows:

> **Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered injury or damage . . . made against any protected person. . . . [O]ur duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments, settlements or medical expenses.

The policy also contains numerous endorsements modifying the coverage provisions of the policy, including an Additional Protected Person Endorsement ("additional insured endorsement"), which reads, in part, as follows:

> This Endorsement changes your Contractors General Liability Protection.
>
> How Coverage Is Changed
>
> There are two changes which are explained below.
>
> 1. The following is added to the Who Is Protected Under this Agreement section. This change adds certain protected persons and limits their protection.
>
> Additional Protected Person. The person or organization shown below is an additional protected person *as required by contract with you.* But only for covered injury or damage arising out of:

---

6. "Event" is defined to mean an accident.

... your work for that person or organization....

ADDITIONAL PROTECTED PERSON(S): Any Person or Organization required to be made an additional protected person in a written contract executed prior to a loss.

. . . .

2. The following is added to the Other primary insurance section. This change broadens coverage.

. . . .

[W]e will consider this insurance to be primary to and non-contributory with the insurance issued directly to the additional protected person listed above if ... your contract specifically requires that we consider this insurance to be primary....

(Emphasis added.)

The parties do not dispute that the effect of the foregoing provisions of the policy was to make Phillips an additional insured under the policy and to make the coverage available under the policy primary to any other insurance coverage available to Phillips. Rather, their dispute focuses on the *type* of insurance coverage that St. Paul was obligated to provide Phillips as an additional insured.

As noted above, the policy issued by St. Paul carried a bodily-injury liability limit of $1 million per event. The policy also contains a Contractors Commercial General Liability Deductible Endorsement ("deductible endorsement"), which reads, in part, as follows:

Deductibles Apply To Damages And Claims Expenses—Limits Are Reduced By The Deductible Amounts

This endorsement changes your Contractors Commercial General Liability Protection.

IMPORTANT NOTE: This endorsement makes you responsible for paying damages and claims expenses within the deductibles that apply.

. . . .

Bodily injury and property damage each event deductible—other than products and completed work. $1,000,000.

. . . .

There are two changes which are explained below.

1. The following section is added. This change adds deductibles to be paid by you.

DEDUCTIBLES

The deductibles shown in the Deductible Table and the information contained in this section fix the amount of damage and claim expenses that you'll be responsible fo[r] paying. Only those deductibles for which amounts are shown in the Deductible Table apply.

We will pay all or part of the deductible for you, unless we agree to do otherwise. WHEN WE DO MAKE PAYMENT, YOU AGREE TO REPAY THAT AMOUNT TO U.S. PROMPTLY AFTER WE NOTIFY YOU OF THE PAYMENT.

Also, *if we pay claim expenses that's [sic] subject to the applicable deductible, YOU AGREE TO REPAY THAT AMOUNT TO U.S. PROMPTLY AFTER WE NOTIFY YOU OF THE PAYMENT.*

*Claim expenses includes* [sic] the following fees, costs and expenses that result directly from the investigation, defense, or settlement of a specific claim or suit:

* *fees, costs or expenses of attorneys.*

. . . .

Bodily injury and property damage each event deductible—other than products and completed work. You'll be responsible for the amount of damage and

claim expenses within this deductible....

....

2. The following is added to the Limits of Coverage section. This section explains how the limits of coverage apply when a deductible applies.

*The limits shown* in the Coverage Summary, other than the General Total Limit and the Products and Completed Work total limit, *are reduced by the deductible amount that applies.*

(Emphasis added.)

### Application

Phillips notes that the "plain language" of the policy expressly states that St. Paul's duty to defend continues until St. Paul has "used up the limits of coverage that apply with the payment of judgments, settlements or medical expresses." Thus, Phillips argues that, because St. Paul did not indemnify Phillips for any "judgments, settlements, or medical expenses," the policy's duty to defend language obligates St. Paul to continue to pay Phillips's defense costs. However, we may not construe this term of the policy in isolation; rather, we must consider all of the terms of the policy within the context of the entire policy. *Forbau,* 876 S.W.2d at 133–34; *Hartrick,* 62 S.W.3d at 274.

St. Paul contends that the effect of the policy's deductible endorsement, which sets Zachry's deductible at an amount equal to the bodily-injury liability limit, is to reduce St. Paul's net liability under the policy to zero. Further, St. Paul contends that, because the deductible endorsement specifies that "claim expenses," including attorney's fees, are subject to the deductible, St. Paul's contractual obligation to defend Phillips in the underlying lawsuits ceased once St. Paul had expended $1 million in attorney's fees on behalf of Phillips, regardless of whether a settlement or judgment had been paid.

Phillips argues that the effect of the policy's deductible endorsement to make the policy a "fronting" policy is relevant only to St. Paul's contractual obligations to Zachry. Phillips asserts that, regardless of the terms of the policy actually obtained by Zachry, Zachry was contractually obligated by a "plain reading" of the terms of the M.S.A. § to obtain "traditional" commercial general liability coverage, i.e., a policy whose limits of liability were not eroded by an insurer's "fronting" of "claim expenses" on behalf of its insured, but whose limits were exhausted only upon the payment of settlements or judgments equal to the liability limits. Phillips also argues that, because the policy's additional insured endorsement provided that Phillips was an additional insured under the policy "as required by contract with [Zachry]," the terms of the M.S.A. § requiring Zachry to purchase "traditional" commercial general liability insurance coverage govern and are to be read into or along with the coverage provisions of the policy. Finally, Phillips argues that, because the deductible endorsement uses the term "you," which is defined by the policy as "Zachry," instead of the term "protected persons," the provisions of that endorsement apply only to St. Paul's obligations to its insured, Zachry, and do not apply to the coverage that St. Paul was obligated to provide Phillips as Zachry's additional insured.

However, other than the limits of coverage required, the M.S.A. § does not expressly specify the type of commercial general liability coverage that Zachry was required to purchase. Phillips's argument that the terms of the M.S.A. § obligated Zachry to purchase a "traditional" commercial general liability policy—one with an unlimited duty to defend until liability

limits are exhausted by settlements or judgments—requires the insertion of terms into the policy which are not contained in the M.S.A. § itself. This we may not do. *See Kelley–Coppedge*, 980 S.W.2d at 464 (citing *CBI*, 907 S.W.2d at 520) (noting that parol evidence may not be relied on for purpose of creating ambiguity in contract).

Moreover, the policy's additional insured endorsement language, set out above, naming Phillips as an additional insured under the policy "as required by contract with you [Zachry]," is not, as argued by Phillips, "an explicit reference clearly indicating the parties' intention" to include the terms and provisions of the M.S.A. § as part of the policy. *See Urrutia*, 992 S.W.2d at 442. This language merely clarifies which persons or entities are to be additional insureds under the policy, namely, those persons "required to be made an additional protected person in a written contract executed prior to a loss."

■ Finally, the policy's deductible endorsement is not applicable only to St. Paul's obligations to its insured, Zachry. The terms of the endorsement do not limit its application only to named insureds. We are bound to construe the terms of the policy as a whole, considering all of its terms in context, and to give effect to all provisions of the policy, so that none will be rendered meaningless. *Kelley–Coppedge*, 980 S.W.2d at 464; *Beaston*, 907 S.W.2d at 433; *Hartrick*, 62 S.W.3d at 274. To apply the construction of the terms of the policy as urged by Phillips would have the effect of rendering the terms of the deductible endorsement meaningless with regard to St. Paul's obligations to Zachry's named insured, Phillips, while simultaneously leaving them valid and enforceable with regard to St. Paul's obligations to its named insured, Zachry.

■ As noted above, an ambiguity does not arise in a contract merely because the parties advance conflicting contractual interpretations. *Kelley–Coppedge*, 980 S.W.2d at 465. We find no ambiguity in the policy with respect to the scope of St. Paul's defense obligation to Phillips. Additionally, a contract, to be legally binding, must be sufficiently definite in its terms so that a court can understand the parties' obligations. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). Here, the policy in question does not demonstrate that Phillips, as an additional insured, was owed an unlimited defense by St. Paul against the underlying lawsuits until St. Paul, in the words of Phillips, "exhausted its policy liability limits by indemnifying Phillips for damage payments." On the contrary, because the policy purchased by Zachary was, in fact, a "fronting" policy and Zachary was obligated to reimburse St. Paul for all claims expenses, including attorney's fees, incurred in defense of the underlying lawsuits, St. Paul owed no further obligation to Phillips once St. Paul expended $1 million in defending Phillips.

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of St. Paul and in denying Phillips's motion for reconsideration. We overrule both of Phillips's issues.

## Conclusion

We affirm the judgment of the trial court.