AMTECH ELEVATOR SERVICES COMPANY, Appellant,

v.

CSFB 1998–P1 BUFFALO SPEEDWAY OFFICE LTD. Partnership, LNR Partners, Inc., and MRIO, Inc. d/b/a Moody Rambin Office Services f/k/a Moody Rambin Interests, Inc., Appellees.

No. 01–07–00401–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 13, 2007.

Bradley M. Bingham, Debra L. Bradberry, Bingham, Mann, House & Gibson, Houston, TX, for appellant.

Les Pickett, Galloway, Johnson, Tompkins, Burr & Smith, Scott A. Weiss, Houston, for appellees.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

In this insurance dispute, appellant/counter-defendant, Amtech Elevator Services Company ("Amtech"), challenges a summary judgment rendered in favor of appellees/counter-plaintiffs, CSFB 1998–P1 Buffalo Speedway Office Ltd. Partnership, LNR Partners, Inc., and MRIO, Inc.

d/b/a Moody Rambin Office Services f/k/a Moody Rambin Interests, Inc. (collectively referred to as "CSFB"). In two issues on appeal, Amtech argues that the trial court erred (1) by enforcing the indemnity provisions in a service contract and (2) by finding that Amtech failed to obtain adequate insurance coverage.

We affirm.

## Background

In 2003, VTM Elevator Company entered into a service contract with CSFB whereby VTM would service elevators at 3700 Buffalo Speedway, a property owned by CSFB.[1] Subsequently, Amtech, an elevator service company, entered into a contract that assumed the contractual responsibilities of VTM. On August 9, 2004, Ross Bridwell sustained an injury on one of CSFB's elevators when the elevator dropped and then stopped abruptly. Bridwell sued Amtech, VTM,[2] Moody Rambin Interests,[3] MRIO, LNR Partners, Inc.,[4] and CSFB, alleging negligence and premises liability. CSFB filed a cross action against Amtech, alleging that Amtech had merged with VTM and assumed the obligations of VTM, including the contractual obligations of CSFB, and that Amtech had agreed to indemnify CSFB. CSFB also alleged that, pursuant to a service contract, Amtech had agreed to maintain a commercial general liability (CGL) insurance policy and to name CSFB as an additional insured. CSFB alleged breach of contract in that Amtech had failed to defend, indemnify, and name CSFB as an additional insured on Amtech's liability

1. The parties to the original contract were VTM and CSFB. Amtech and VTM were later acquired by the same parent organization and Amtech assumed VTM's obligations under the service contract at issue here.

2. Amtech and VTM were responsible for maintenance of the elevators at the property.

3. Moody Rambin and MRIO were responsible for management of the property.

4. Bridwell alleged that LNR either was the owner of the property at the time in question or was the general partner of CSFB.

policy. CSFB also sought declaratory relief, asking the trial court to "declare that the indemnity and insurance provisions of the Service Contract are valid and enforceable, that Amtech has a duty to defend and indemnify CSFB under the Service Contract and that Amtech has a duty to name CSFB as an additional insured on the appropriate policies of insurance under the contract." Amtech denied the allegations.

CSFB moved for summary judgment, arguing that the service contract and indemnity agreement were valid and enforceable. CSFB also moved for summary judgment on the ground that Amtech had "failed to perform its contractual duty to provide CGL coverage to [CSFB] for the claims made by [Bridwell] in the underlying suit." Amtech responded that the indemnity clause was unenforceable as a matter of law because the indemnity language was not conspicuous, as required by state statutes.[5] Amtech further argued that it had complied with the insurance procurement requirement in that it had obtained a CGL policy with limits of $1,000,000 per occurrence for bodily injury, personal injury, and property damage and that the policy had an "omnibus additional insured clause" that provided coverage to anyone Amtech had agreed to name as an additional insured. Amtech stated that it had provided CSFB with a certificate of insurance evidencing the coverage. CSFB replied by contending that Amtech's argument that the indemnity language was not conspicuous—and was therefore not enforceable—was "specious" because the relevant language indemnifying CSFB was not the language Amtech pointed to as setting out its obligation to indemnify CSFB, but requirements located on a prior page of the contract. CSFB also argued that the CGL policy Amtech obtained pursuant to their contract was illusory because "[CSFB] must reimburse Hartford for all sums it pays to satisfy a third-party claim up to the deductible limit of $1 million" and therefore "Amtech failed to obtain insurance coverage for [CSFB] that was 'adequate to protect the interest of [CSFB].'" The trial court granted CSFB's motion for summary judgment.

Amtech filed a motion for rehearing arguing that the risk-shifting language itself must be conspicuous in order for an indemnification provision to be enforceable. Amtech agreed with CSFB that the "fronting" insurance policy it had procured did have a large "self-insured retention," but it contended that, in any event, it had complied with the service contract's requirements. On May 4, 2007, the trial court implicitly denied the motion for rehearing because it granted CSFB's motion for summary judgment again. On the same day, it signed an order allowing an interlocutory appeal of its order granting summary judgment.[6]

### Standard of Review

Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Bendigo v. City of Houston,* 178 S.W.3d 112, 113 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The standard of review for a traditional summary judgment motion is threefold: (1) the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding

---

**5.** *See* Tex. Bus. & Com.Code Ann. § 1.201(b)(10) (Vernon Supp.2007).

**6.** A trial court may issue an order for interlocutory appeal of a controlling issue of law if certain requirements are met. *See* Tex Civ. Prac. & Rem.Code Ann § 51.014(d) (Vernon Supp.2007).

summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *see* TEX.R. CIV. P. 166a(c). A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *EPGT Texas Pipeline, L.P. v. Harris County Flood Control Dist.*, 176 S.W.3d 330, 335 (Tex.App.-Houston [1st Dist.] 2004, no pet.). If a trial court's order granting summary judgment does not specify the basis for the court's ruling, as is the case here, the summary judgment will be affirmed if any of the theories advanced by the movant is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

## Analysis

In its first issue, Amtech argues that the indemnity provision in the service contract is unenforceable because it does not satisfy both fair notice requirements of (1) the express negligence doctrine and (2) conspicuousness.

### Express Negligence Doctrine

 Because indemnity provisions seek to shift the risk of one party's future negligence to the other party, Texas imposes a fair notice requirement before enforcing such agreements. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508–09 (Tex.1993). The fair notice requirements are the express negligence doctrine and the conspicuousness requirement. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex.2004). Under the express negligence doctrine, an intent to indemnify one of the parties from the consequences of its own negligence,

"must be specifically stated in the four corners of the document." *Reyes*, 134 S.W.3d at 192 (quoting *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex.1987)).

 CSFB contends that Amtech made no argument to the trial court regarding the express negligence doctrine and thus cannot assert it for the first time on appeal. *See* TEX.R.APP. P. 33.1. Based on the record before us, we agree. In its response to CSFB's motion for summary judgment, Amtech argued that the indemnity provision was not conspicuous and was thus unenforceable. It did not assert that the indemnity provision failed to meet the express negligence doctrine. Thus, the application of the express negligence doctrine is waived, and we will confine our analysis to Amtech's argument on conspicuousness.

### Conspicuousness

 The conspicuousness requirement mandates that "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Reyes*, 134 S.W.3d at 192 (quoting *Dresser*, 853 S.W.2d at 508). Language is conspicuous if it appears in larger type, contrasting colors, or otherwise calls attention to itself. *Dresser*, 853 S.W.2d at 511; *see also* TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (listing ways to make a term conspicuous). Whether an agreement meets the conspicuous requirement is a question of law for the court. *Dresser*, 853 S.W.2d at 509. An agreement that does not "satisfy either of the fair notice requirements when they are imposed is unenforceable as a matter of law." *Reyes*, 134 S.W.3d at 192.

A term is conspicuous when it is written, displayed, or presented such that a reasonable person against which it is to operate ought to have noticed it. TEX. BUS. &

Com.Code Ann. § 1.201(b)(10). Conspicuous terms include the following: (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size, and (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language. *Id.* § 1.201(b)(10)(A), (B).

The indemnification clause in the service contract provides:

5. *INDEMNIFICATIONS:* NOT WITHSTANDING ANY PROVISION OF THE SERVICE CONTRACT TO THE CONTRARY, CONTRACTOR HEREBY AGREES TO DEFEND, INDEMNIFY, AND HOLD MANAGER, AND OWNER, THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, AGENTS, AFFILIATES, EMPLOYEES AND INDEPENDENT CONTRACTORS (COLLECTIVELY THE "INDEMNITEES"), HARMLESS FROM ALL FINES, SUITS, LEVIES, LIABILITIES, PROCEEDINGS, CLAIMS, DEMAND[S], ACTIONS, OR CAUSES OF ACTION, OF ANY KIND AND OF WHATSOEVER NATURE, WHETHER IN CONTRACT OR IN TORT, INCLUDING, BUT NOT LIMITED TO COSTS OF INVESTIGATION, COURT COSTS, LITIGATION EXPENSES, AND ATTORNEY'S FEES ARISING FROM, GROWING OUT OF, IN CONJUNCTION WITH, OR INCIDENTAL TO THE SERVICES, INCLUDING BUT NOT LIMITED TO:

On the next page of the service contract, the indemnification clause continues:

1. Any claim of worker's compensation benefits, salaries, employment taxes, benefits, pensions, or assessments by or injury to or death of any employee of Contractor and any subcontractor and/or independent contractor of Contractor (and any employees of any such subcontractor and/or independent contractor), or any third party whether caused by the Contractor, the concurrent negligence of any Indemnitee, the sole negligence of any Indemnitee or by any cause whatsoever.

The indemnification clause includes a capitalized heading, alerting the reader to the indemnification clause, followed by language in all capitalized letters. The capitalized language states, *inter alia:* "CONTRACTOR HEREBY AGREES TO DEFEND, INDEMNIFY, AND HOLD ... OWNER [CSFB] ... HARMLESS FROM ALL ... SUITS, ... PROCEEDINGS, CLAIMS, DEMAND[S], ACTIONS, OR CAUSES OF ACTION, OF ANY KIND AND OF WHATSOEVER NATURE." Moreover, the end of the paragraph states, "INCLUDING BUT NOT LIMITED TO," which alerts the reader that additional language regarding indemnification occurs on the following page. The additional language further specifies what had already been conspicuously stated in general terms—that Amtech agreed to indemnify CSFB for any action related in any way to "the SERVICES" covered by the services contract. We hold that the capitalized heading, followed by the language in all capitals, attracts the attention of a reasonable person, and thus, the indemnity provision is conspicuous. *See Dresser Indus.,* 853 S.W.2d at 511 (stating that language in capital headings is conspicuous); *Tesoro Petro-*

*leum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 132 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (finding that two paragraphs were conspicuous because headings were in all capitals and party relied on provisions in delineating reservation of rights letter).

We overrule Amtech's first issue on appeal.

## Contract Interpretation

In its second issue, Amtech argues that summary judgment was improper because Amtech complied with its contractual agreement to name CSFB as an additional insured on a CGL policy.

The service contract required Amtech to carry insurance. Specifically, the contract specified:

B. Notwithstanding any provision of the Service Contract to the contrary Contractor, at its sole cost and expense shall at all times during the term of the Contract, carry and maintain the following insurance coverage with insurance companies authorized to do business within the State of Texas. All such insurance policies shall waive all rights of subrogation against the Indemnitee. Contractor shall promptly furnish Manager with certificates of said insurance policy or policies and shall assume responsibility for placement and renewal of all such policies;

C. Comprehensive liability insurance, on an occurrence form, adequate to protect the interest of the parties hereto, which policy or policies shall be so written as to protect Manager, and Owner in the same manner and to the same extent they protect Contractor and shall name Manager, and Owner as additional insureds. General liability risks and key exposures to be covered shall include, but not be limited to, the premises and Contractor's operations in connection with the Property, blanket contractual, personal injury, and use of owned, non-owned, or hired automobiles. The limits of each policy shall be not less than $1,000,000 per occurrence for bodily injury, personal injury and property damage and shall name Manager and Owner as additional insured;

Absent ambiguity, we interpret a contract as a matter of law. *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex.1999). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). "An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *Parks*, 1 S.W.3d at 101. We presume that the parties intended every clause to have an effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

The evidence shows that Amtech obtained a CGL policy which named CSFB as an additional insured. CSFB asserts that Amtech breached the service contract because the CGL policy it obtained had a deductible equal to the amount of the policy limits. This type of policy is known as

a "fronting" policy. *See Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co.*, 113 S.W.3d 37, 43–44 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (noting that policy is "fronting policy" when amount of deductible payable by insured equaled amount of liability limits). One of the endorsements to Amtech's policy states, "THIS IS A FRONTED POLICY WHEREIN THE DEDUCTIBLE MATCHES AND EXHAUSTS THE LIMITS OF LIABILITY. IF WE PAY ANY SUMS UNDER THIS POLICY, WHETHER DAMAGES OR 'CLAIM EXPENSES,' YOU ARE OBLIGATED TO PROMPTLY REIMBURSE US." Because the insurance policy has a deductible equal to the policy limits, CSFB argues that the insurance policy is illusory. Amtech argues that, in accordance with *Phillips Petroleum Company v. St. Paul Fire & Marine Insurance Company*, it complied with the service contract when it obtained insurance naming CSFB as an additional insured. 113 S.W.3d at 43–44.

In *Phillips Petroleum*, we interpreted a contract between Zachry, a contractor, and Phillips, an owner, that required Zachry to purchase insurance and to name Phillips as an additional insured. *Id.* at 40–44. The contract required Zachry to obtain "Commercial General Liability Insurance on an occurrence form with a combined single limit of $1,000,000 per occurrence...." *Id.* at 41. As in this case, Zachry purchased a fronting policy from St. Paul Insurance Company that provided several types of coverage and carried a liability limit for bodily injury of $1 million per event. *Id.* at 39. The policy required Zachry to pay a deductible equal to the limits of liability after St. Paul had paid on the policy. *Id.* The policy stated, "We will pay all or part of the deductible for you, unless we agree to do otherwise. WHEN WE DO MAKE PAYMENT, YOU [ZACHRY] AGREE TO REPAY THAT AMOUNT TO U.S.

PROMPTLY AFTER WE NOTIFY YOU OF THE PAYMENT." *Id.* at 42. An accident occurred and Zachry's employees brought suit against Phillips. *Id.* at 39. Phillips demanded that Zachry's insurer, St. Paul, provide Phillips with a defense. *Id.* St. Paul provided a defense subject to a reservation of its rights under the policy. *Id.* It expended $1 million in its defense of Phillips. *Id.* at 39 n. 5. Phillips then sued St. Paul for breach of contract and sought a declaratory judgment that St. Paul owed Phillips an unlimited defense to the underlying lawsuits and indemnity up to the liability limits of the policy. *Id.*

St. Paul moved for summary judgment and argued that St. Paul owed no further obligation to Phillips once St. Paul expended $1 million in defending Phillips in the underlying lawsuits. *Id.* The trial court granted summary judgment and Phillips appealed. *Id.* On appeal, Phillips argued that Zachry was contractually obligated by a plain reading of the terms of the contract to obtain "traditional" CGL coverage. *Id.* at 43. This Court disagreed with Phillips' arguments because the Zachry–Phillips contract

d[id]not expressly specify the type of commercial general liability coverage that Zachry was required to purchase. Phillips's argument that the terms of the [contract] obligated Zachry to purchase a 'traditional' commercial general liability policy—one with an unlimited duty to defend until liability limits are exhausted by settlements or judgments—requires the insertion of terms into the policy which are not contained in the [contract] itself. This we may not do.

*Id.* at 43–44. In sum, because the Zachry–Phillips contract did not require Zachry to purchase a traditional policy, this Court refused to write such a requirement. *Id.*

We disagree with Amtech that *Phillips* controls the disposition of this issue in this case. Like the St. Paul fronting policy considered in *Phillips,* the Hartford Fire Insurance Company CGL policy that Amtech purchased to fulfill its contractual obligations to CSFB was a fronting policy that required Hartford to defend insureds against claims covered by the policy, to settle suits against them, and to pay on behalf of the insured the sums the insured was legally obligated to pay as damages.

Amtech, like Zachry, was obligated to reimburse Hartford "[U]pon notification of the action taken ..., up to the amount of the applicable deductible set forth in the Deductible Endorsement for 100% of the limits that have been paid by us." In other words, the policy shifted the risk from the insurance company back to the Named Insured, Amtech. In *Phillips,* Zachry reimbursed St. Paul up to the limits of the policy after St. Paul provided the defense to Phillips. Therefore, it fulfilled its duty to insure Phillips, and nothing in the Zachry–Phillips contract required Zachry to do more. Here, by contrast, there is nothing in the record to indicate that Hartford fulfilled its duty to provide a defense to CSFB up to policy limits or that Amtech was able and did repay Hartford up to the limits of the Hartford policy. Rather, the evidence indicates that Amtech attempted to shift the burden of repayment to CSFB as an additional named insured.

The question in this case, therefore, in contrast to *Phillips,* is not whether Amtech's contract with CSFB required it to purchase a CGL policy that would provide an unlimited defense, as opposed to the $1 million defense it received, but whether Amtech complied with the express provisions in the service contract that required Amtech to obtain "[c]omprehensive liability insurance ... *adequate to protect the interest of the parties hereto.*" (Emphasis added). The trial court apparently recognized the service contract's language because its order granting summary judgment in favor of CSFB stated that Amtech breached its contractual obligations in that the service contract "obligated Amtech to defend and indemnify, hold [CSFB] harmless against all claims and to name [CSFB] as additional insureds on an *appropriate* CGL policy...." (Emphasis added). No one disputes that CSFB was not provided insurance coverage up to policy limits. Thus, the fronting policy was not adequate to protect the interests of CSFB. Accordingly, we hold that by obtaining a fronting policy that did not provide coverage within the limits of the policy at no cost to CSFB, when the contract required a policy adequate to protect the interests of the parties, Amtech breached its contractual obligations. Thus, the trial court correctly granted summary judgment in favor of CSFB.

We overrule Amtech's second issue on appeal.

## Conclusion

We affirm the judgment of the trial court.