Opinion Issued December 13, 2007


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00401-CV






AMTECH ELEVATOR SERVICES COMPANY, Appellant


V.


CSFB 1998-P1 BUFFALO SPEEDWAY OFFICE LTD. PARTNERSHIP,
LNR PARTNERS, INC., AND MRIO, INC. D/B/A MOODY RAMBIN
OFFICE SERVICES F/K/A MOODY RAMBIN INTERESTS, INC.,
Appellees






On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 2006-39331






O P I N I O N


 In this insurance dispute, appellant/counter-defendant, Amtech Elevator
Services Company ("Amtech"), challenges a summary judgment rendered in favor of
appellees/counter-plaintiffs, CSFB 1998-P1 Buffalo Speedway Office Ltd.
Partnership, LNR Partners, Inc., and MRIO, Inc. d/b/a Moody Rambin Office
Services f/k/a Moody Rambin Interests, Inc. (collectively referred to as "CSFB"). In
two issues on appeal, Amtech argues that the trial court erred (1) by enforcing the
indemnity provisions in a service contract and (2) by finding that Amtech failed to
obtain adequate insurance coverage.

 We affirm.

Background


 In 2003, VTM Elevator Company entered into a service contract with CSFB
whereby VTM would service elevators at 3700 Buffalo Speedway, a property owned
by CSFB. (1) Subsequently, Amtech, an elevator service company, entered into a
contract that assumed the contractual responsibilities of VTM. On August 9, 2004,
Ross Bridwell sustained an injury on one of CSFB's elevators when the elevator
dropped and then stopped abruptly. Bridwell sued Amtech, VTM, (2) Moody Rambin
Interests, (3) MRIO, LNR Partners, Inc., (4) and CSFB, alleging negligence and premises
liability. CSFB filed a cross action against Amtech, alleging that Amtech had merged
with VTM and assumed the obligations of VTM, including the contractual
obligations of CSFB, and that Amtech had agreed to indemnify CSFB. CSFB also
alleged that, pursuant to a service contract, Amtech had agreed to maintain a
commercial general liability (CGL) insurance policy and to name CSFB as an
additional insured. CSFB alleged breach of contract in that Amtech had failed to
defend, indemnify, and name CSFB as an additional insured on Amtech's liability
policy. CSFB also sought declaratory relief, asking the trial court to "declare that the
indemnity and insurance provisions of the Service Contract are valid and enforceable,
that Amtech has a duty to defend and indemnify CSFB under the Service Contract
and that Amtech has a duty to name CSFB as an additional insured on the appropriate
policies of insurance under the contract." Amtech denied the allegations. 

 CSFB moved for summary judgment, arguing that the service contract and
indemnity agreement were valid and enforceable. CSFB also moved for summary
judgment on the ground that Amtech had "failed to perform its contractual duty to
provide CGL coverage to [CSFB] for the claims made by [Bridwell] in the underlying
suit." Amtech responded that the indemnity clause was unenforceable as a matter of
law because the indemnity language was not conspicuous, as required by state
statutes. (5) Amtech further argued that it had complied with the insurance procurement
requirement in that it had obtained a CGL policy with limits of $1,000,000 per
occurrence for bodily injury, personal injury, and property damage and that the policy
had an "omnibus additional insured clause" that provided coverage to anyone Amtech
had agreed to name as an additional insured. Amtech stated that it had provided
CSFB with a certificate of insurance evidencing the coverage. CSFB replied by
contending that Amtech's argument that the indemnity language was not
conspicuous--and was therefore not enforceable--was "specious" because the
relevant language indemnifying CSFB was not the language Amtech pointed to as
setting out its obligation to indemnify CSFB, but requirements located on a prior page
of the contract. CSFB also argued that the CGL policy Amtech obtained pursuant to
their contract was illusory because "[CSFB] must reimburse Hartford for all sums it
pays to satisfy a third-party claim up to the deductible limit of $1 million" and
therefore "Amtech failed to obtain insurance coverage for [CSFB] that was 'adequate
to protect the interest of [CSFB].'" The trial court granted CSFB's motion for
summary judgment.

 Amtech filed a motion for rehearing arguing that the risk-shifting language
itself must be conspicuous in order for an indemnification provision to be
enforceable. Amtech agreed with CSFB that the "fronting" insurance policy it had
procured did have a large "self-insured retention," but it contended that, in any event,
it had complied with the service contract's requirements. On May 4, 2007, the trial
court implicitly denied the motion for rehearing because it granted CSFB's motion
for summary judgment again. On the same day, it signed an order allowing an
interlocutory appeal of its order granting summary judgment. (6) 

Standard of Review


 Because summary judgment is a question of law, we review a trial court's
summary judgment decision de novo. Bendigo v. City of Houston, 178 S.W.3d 112,
113 (Tex. App.--Houston [1st Dist.] 2005, no pet.). The standard of review for a
traditional summary judgment motion is threefold: (1) the movant must show that
there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, the court must take evidence favorable to the
nonmovant as true; and (3) the court must indulge every reasonable inference in favor
of the nonmovant and resolve any doubts in the nonmovant's favor. Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); see Tex. R. Civ. P. 166a(c).
A defendant seeking summary judgment must as a matter of law negate at least one
element of each of the plaintiff's theories of recovery or plead and prove each element
of an affirmative defense. EPGT Texas Pipeline, L.P. v. Harris County Flood
Control Dist., 176 S.W.3d 330, 335 (Tex. App.--Houston [1st Dist.] 2004, no pet.). 
If a trial court's order granting summary judgment does not specify the basis for the
court's ruling, as is the case here, the summary judgment will be affirmed if any of
the theories advanced by the movant is meritorious. Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989).

Analysis


 In its first issue, Amtech argues that the indemnity provision in the service
contract is unenforceable because it does not satisfy both fair notice requirements of
(1) the express negligence doctrine and (2) conspicuousness. 

Express Negligence Doctrine

 Because indemnity provisions seek to shift the risk of one party's future
negligence to the other party, Texas imposes a fair notice requirement before
enforcing such agreements. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d
505, 508-09 (Tex. 1993). The fair notice requirements are the express negligence
doctrine and the conspicuousness requirement. Storage & Processors, Inc. v. Reyes,
134 S.W.3d 190, 192 (Tex. 2004). Under the express negligence doctrine, an intent
to indemnify one of the parties from the consequences of its own negligence, "must
be specifically stated in the four corners of the document." Reyes, 134 S.W.3d at 192
(quoting Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 707 (Tex. 1987)). 

 CSFB contends that Amtech made no argument to the trial court regarding the
express negligence doctrine and thus cannot assert it for the first time on appeal. See
Tex. R. App. P. 33.1. Based on the record before us, we agree. In its response to
CSFB's motion for summary judgment, Amtech argued that the indemnity provision
was not conspicuous and was thus unenforceable. It did not assert that the indemnity
provision failed to meet the express negligence doctrine. Thus, the application of the
express negligence doctrine is waived, and we will confine our analysis to Amtech's
argument on conspicuousness.

Conspicuousness

 The conspicuousness requirement mandates that "something must appear on
the face of the [contract] to attract the attention of a reasonable person when he looks
at it." Reyes, 134 S.W.3d at 192 (quoting Dresser, 853 S.W.2d at 508). Language
is conspicuous if it appears in larger type, contrasting colors, or otherwise calls
attention to itself. Dresser, 853 S.W.2d at 511; see also Tex. Bus. & Com. Code
Ann. § 1.201(b)(10) (listing ways to make a term conspicuous). Whether an
agreement meets the conspicuous requirement is a question of law for the court. 
Dresser, 853 S.W.2d at 509. An agreement that does not "satisfy either of the fair
notice requirements when they are imposed is unenforceable as a matter of law." 
Reyes, 134 S.W.3d at 192. 

 A term is conspicuous when it is written, displayed, or presented such that a
reasonable person against which it is to operate ought to have noticed it. Tex. Bus.
& Com. Code Ann. § 1.201(10). Conspicuous terms include the following: (A) a
heading in capitals equal to or greater in size than the surrounding text, or in
contrasting type, font, or color to the surrounding text of the same or lesser size, and
(B) language in the body of a record or display in larger type than the surrounding
text, or in contrasting type, font, or color to the surrounding text of the same size, or
set off from surrounding text of the same size by symbols or other marks that call
attention to the language. Id. § 1.201(10)(A), (B).

 The indemnification clause in the service contract provides:

 5. INDEMNIFICATIONS: NOT WITHSTANDING ANY
PROVISION OF THE SERVICE CONTRACT TO THE
CONTRARY, CONTRACTOR HEREBY AGREES TO
DEFEND, INDEMNIFY, AND HOLD MANAGER, AND
OWNER, THEIR RESPECTIVE OFFICERS, DIRECTORS,
SHAREHOLDERS, AGENTS, AFFILIATES, EMPLOYEES
AND INDEPENDENT CONTRACTORS (COLLECTIVELY
THE "INDEMNITEES"), HARMLESS FROM ALL FINES,
SUITS, LEVIES, LIABILITIES, PROCEEDINGS, CLAIMS,
DEMAND[S], ACTIONS, OR CAUSES OF ACTION, OF ANY
KIND AND OF WHATSOEVER NATURE, WHETHER IN
CONTRACT OR IN TORT, INCLUDING, BUT NOT LIMITED
TO COSTS OF INVESTIGATION, COURT COSTS,
LITIGATION EXPENSES, AND ATTORNEY'S FEES
ARISING FROM, GROWING OUT OF, IN CONJUNCTION
WITH, OR INCIDENTAL TO THE SERVICES, INCLUDING
BUT NOT LIMITED TO:


 On the next page of the service contract, the indemnification clause 


continues:


 1. Any claim of worker's compensation benefits, salaries,
employment taxes, benefits, pensions, or assessments by or injury
to or death of any employee of Contractor and any subcontractor
and/or independent contractor of Contractor (and any employees
of any such subcontractor and/or independent contractor), or any
third party whether caused by the Contractor, the concurrent
negligence of any Indemnitee, the sole negligence of any
Indemnitee or by any cause whatsoever.


 The indemnification clause includes a capitalized heading, alerting the reader
to the indemnification clause, followed by language in all capitalized letters. The
capitalized language states, inter alia: "CONTRACTOR HEREBY AGREES TO
DEFEND, INDEMNIFY, AND HOLD . . . OWNER [CSFB] . . . HARMLESS FROM
ALL . . . SUITS, . . . PROCEEDINGS, CLAIMS, DEMAND[S], ACTIONS, OR
CAUSES OF ACTION, OF ANY KIND AND OF WHATSOEVER NATURE." 
Moreover, the end of the paragraph states, "INCLUDING BUT NOT LIMITED TO,"
which alerts the reader that additional language regarding indemnification occurs on
the following page. The additional language further specifies what had already been
conspicuously stated in general terms--that Amtech agreed to indemnify CSFB for
any action related in any way to "the SERVICES" covered by the services contract. 
We hold that the capitalized heading, followed by the language in all capitals, attracts
the attention of a reasonable person, and thus, the indemnity provision is conspicuous. 
See Dresser Indus., 853 S.W.2d at 511 (stating that language in capital headings is
conspicuous); Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d
118, 132 (Tex. App.--Houston [1st Dist.] 2002, pet. denied) (finding that two
paragraphs were conspicuous because headings were in all capitals and party relied
on provisions in delineating reservation of rights letter). 

 We overrule Amtech's first issue on appeal.

Contract Interpretation

 In its second issue, Amtech argues that summary judgment was improper
because Amtech complied with its contractual agreement to name CSFB as an
additional insured on a CGL policy. 

 The service contract required Amtech to carry insurance. Specifically, the
contract specified:

 B. Notwithstanding any provision of the Service Contract to the
contrary Contractor, at its sole cost and expense shall at all times
during the term of the Contract, carry and maintain the following
insurance coverage with insurance companies authorized to do
business within the State of Texas. All such insurance policies
shall waive all rights of subrogation against the Indemnitee. 
Contractor shall promptly furnish Manager with certificates of
said insurance policy or policies and shall assume responsibility
for placement and renewal of all such policies; 


 C. Comprehensive liability insurance, on an occurrence form,
adequate to protect the interest of the parties hereto, which policy
or policies shall be so written as to protect Manager, and Owner
in the same manner and to the same extent they protect Contractor
and shall name Manager, and Owner as additional insureds. 
General liability risks and key exposures to be covered shall
include, but not be limited to, the premises and Contractor's
operations in connection with the Property, blanket contractual,
personal injury, and use of owned, non-owned, or hired
automobiles. The limits of each policy shall be not less than
$1,000,000 per occurrence for bodily injury, personal injury and
property damage and shall name Manager and Owner as
additional insured;


 Absent ambiguity, we interpret a contract as a matter of law. DeWitt County
Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). "Whether a contract is
ambiguous is a question of law that must be decided by examining the contract as a
whole in light of the circumstances present when the contract was entered." 
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1996). "If the written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous and the court will construe
the contract as a matter of law." Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). 
"An ambiguity exists only if the contract language is susceptible to two or more
reasonable interpretations." Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154,
157 (Tex. 2003). The language in a contract is to be given its plain grammatical
meaning unless doing so would defeat the parties' intent. Parks, 1 S.W.3d at 101. 
We presume that the parties intended every clause to have an effect. Heritage Res.,
Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).

 The evidence shows that Amtech obtained a CGL policy which named CSFB
as an additional insured. CSFB asserts that Amtech breached the service contract
because the CGL policy it obtained had a deductible equal to the amount of the policy
limits. This type of policy is known as a "fronting" policy. See Phillips Petroleum
Co. v. St. Paul Fire & Marine Ins. Co., 113 S.W.3d 37, 43-44 (Tex. App.--Houston
[1st Dist.] 2003, pet. denied) (noting that policy is "fronting policy" when amount of
deductible payable by insured equaled amount of liability limits). One of the
endorsements to Amtech's policy states, "THIS IS A FRONTED POLICY
WHEREIN THE DEDUCTIBLE MATCHES AND EXHAUSTS THE LIMITS OF
LIABILITY. IF WE PAY ANY SUMS UNDER THIS POLICY, WHETHER
DAMAGES OR 'CLAIM EXPENSES,' YOU ARE OBLIGATED TO PROMPTLY
REIMBURSE US." Because the insurance policy has a deductible equal to the policy
limits, CSFB argues that the insurance policy is illusory. Amtech argues that, in
accordance with Phillips Petroleum Company v. St. Paul Fire & Marine Insurance
Company, it complied with the service contract when it obtained insurance naming
CSFB as an additional insured. 113 S.W.3d at 43-44.

 In Phillips Petroleum, we interpreted a contract between Zachry, a contractor,
and Phillips, an owner, that required Zachry to purchase insurance and to name
Phillips as an additional insured. Id. at 40-44. The contract required Zachry to
obtain "Commercial General Liability Insurance on an occurrence form with a
combined single limit of $1,000,000 per occurrence. . . ." Id. at 41. As in this case,
Zachry purchased a fronting policy from St. Paul Insurance Company that provided
several types of coverage and carried a liability limit for bodily injury of $1 million
per event. Id. at 39. The policy required Zachry to pay a deductible equal to the
limits of liability after St. Paul had paid on the policy. Id. The policy stated, "We
will pay all or part of the deductible for you, unless we agree to do otherwise. WHEN
WE DO MAKE PAYMENT, YOU [ZACHRY] AGREE TO REPAY THAT
AMOUNT TO US PROMPTLY AFTER WE NOTIFY YOU OF THE PAYMENT." 
Id. at 42. An accident occurred and Zachry's employees brought suit against Phillips. 
Id. at 39. Phillips demanded that Zachry's insurer, St. Paul, provide Phillips with a
defense. Id. St. Paul provided a defense subject to a reservation of its rights under
the policy. Id. It expended $1 million in its defense of Phillips. Id. at 39 n.5. 
Phillips then sued St. Paul for breach of contract and sought a declaratory judgment
that St. Paul owed Phillips an unlimited defense to the underlying lawsuits and
indemnity up to the liability limits of the policy. Id. 

 St. Paul moved for summary judgment and argued that St. Paul owed no further
obligation to Phillips once St. Paul expended $1 million in defending Phillips in the
underlying lawsuits. Id. The trial court granted summary judgment and Phillips
appealed. Id. On appeal, Phillips argued that Zachry was contractually obligated by
a plain reading of the terms of the contract to obtain "traditional" CGL coverage. Id.
at 43. This Court disagreed with Phillips' arguments because the Zachry-Phillips
contract 

d[id]not expressly specify the type of commercial general liability
coverage that Zachry was required to purchase. Phillips's argument that
the terms of the [contract] obligated Zachry to purchase a 'traditional'
commercial general liability policy--one with an unlimited duty to
defend until liability limits are exhausted by settlements or
judgments--requires the insertion of terms into the policy which are not
contained in the [contract] itself. This we may not do.


Id. at 43-44. In sum, because the Zachry-Phillips contract did not require Zachry to
purchase a traditional policy, this Court refused to write such a requirement. Id.

 We disagree with Amtech that Phillips controls the disposition of this issue in
this case. Like the St. Paul fronting policy considered in Phillips, the Hartford Fire
Insurance Company CGL policy that Amtech purchased to fulfill its contractual
obligations to CSFB was a fronting policy that required Hartford to defend insureds
against claims covered by the policy, to settle suits against them, and to pay on behalf
of the insured the sums the insured was legally obligated to pay as damages. Amtech, like Zachry, was obligated to reimburse Hartford "[U]pon notification
of the action taken . . . , up to the amount of the applicable deductible set forth in the
Deductible Endorsement for 100% of the limits that have been paid by us." In other
words, the policy shifted the risk from the insurance company back to the Named
Insured, Amtech. In Phillips, Zachry reimbursed St. Paul up to the limits of the
policy after St. Paul provided the defense to Phillips. Therefore, it fulfilled its duty
to insure Phillips, and nothing in the Zachry-Phillips contract required Zachry to do
more. Here, by contrast, there is nothing in the record to indicate that Hartford
fulfilled its duty to provide a defense to CSFB up to policy limits or that Amtech was
able and did repay Hartford up to the limits of the Hartford policy. Rather, the
evidence indicates that Amtech attempted to shift the burden of repayment to CSFB
as an additional named insured. 

 The question in this case, therefore, in contrast to Phillips, is not whether
Amtech's contract with CSFB required it to purchase a CGL policy that would
provide an unlimited defense, as opposed to the $1 million defense it received, but
whether Amtech complied with the express provisions in the service contract that
required Amtech to obtain "[c]omprehensive liability insurance . . . adequate to
protect the interest of the parties hereto." (Emphasis added). The trial court
apparently recognized the service contract's language because its order granting
summary judgment in favor of CSFB stated that Amtech breached its contractual
obligations in that the service contract "obligated Amtech to defend and indemnify,
hold [CSFB] harmless against all claims and to name [CSFB] as additional insureds
on an appropriate CGL policy . . . ." (Emphasis added). No one disputes that CSFB
was not provided insurance coverage up to policy limits. Thus, the fronting policy
was not adequate to protect the interests of CSFB. Accordingly, we hold that by
obtaining a fronting policy that did not provide coverage within the limits of the
policy at no cost to CSFB, when the contract required a policy adequate to protect the
interests of the parties, Amtech breached its contractual obligations. Thus, the trial
court correctly granted summary judgment in favor of CSFB.

 We overrule Amtech's second issue on appeal.

Conclusion


 We affirm the judgment of the trial court.




 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.

1. The parties to the original contract were VTM and CSFB. Amtech and VTM were
later acquired by the same parent organization and Amtech assumed VTM's
obligations under the service contract at issue here.
2. Amtech and VTM were responsible for maintenance of the elevators at the property. 
3. Moody Rambin and MRIO were responsible for management of the property. 
4. Bridwell alleged that LNR either was the owner of the property at the time in question
or was the general partner of CSFB. 
5. See Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (Vernon Supp. 2007).
6. A trial court may issue an order for interlocutory appeal of a controlling issue of law
if certain requirements are met. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d)
(Vernon Supp. 2007).