Opinion issued July 28, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00489-CV

———————————

Audubon Indemnity Company, As Subrogee of Comanche Contractors, Inc., Appellant

V.

Custom
Site-Prep, Inc.,
Appellee



 



 

On Appeal from the 268th District Court 

Fort Bend County, Texas



Trial Court Case No. 06DCV152935

 



O P I N I O N

          This
appeal primarily concerns the enforceability of an indemnity clause in a written
construction contract between a general contractor, Comanche Contractors, Inc.,
and its subcontractor, CSP Site-Prep, Inc., signed after the completion of the
project.  In a related arbitration
proceeding, the arbitrator concluded that Comanche breached its construction contract
with Fort Bend County Child Advocates, Inc. and, through CSP’s subcontracted
work, negligently performed work on that project.  The arbitrator awarded Child Advocates over
$250,000 in actual damages.  Audubon
Indemnity Company, acting as subrogee to Comanche, sued CSP to recover for
Comanche’s liability under an indemnity provision in the written subcontract
agreement.  Both Audubon and CSP filed
traditional summary judgment motions. 
The trial court granted CSP’s motion and denied Audubon’s motion.  

Audubon contends that the trial
court erred in granting CSP’s motion because (1) Audubon had a valid indemnity
claim based on an indemnity clause that was supported by consideration and that
satisfied the fair notice requirements for indemnity provisions, (2) Audubon
had a valid breach of contract claim for CSP’s alleged failure to obtain
insurance, and (3) Audubon raised valid objections to CSP’s summary judgment
evidence.  Audubon also contends that the
trial court erred in denying its traditional summary judgment motion because
the evidence demonstrates it was entitled to indemnity as a matter of law.  

          We
hold that the trial court could not have properly granted summary judgment on
the basis of CSP’s defense that the written subcontract lacked consideration.  We also hold that the fair notice
requirements do not apply to Audubon’s indemnification claim.  Because fair notice does not invalidate the
indemnity provision and a fact issue exists on consideration, the trial court
improperly granted summary judgment on all of Audubon’s indemnity claims.  We also hold that the trial court improperly
granted summary judgment on Audubon’s breach of contract claim for failure to
obtain insurance.

We therefore reverse the judgment
of the trial court.  

Factual Background

This lawsuit arises out of the alleged defective
construction of the Child Advocates’ office building and Child Advocates’
successful arbitration claim against Comanche. 
Child Advocates hired Comanche as the general contractor on the project.  Comanche, in turn, hired CSP as the
subcontractor to perform the earthwork to prepare the site pad before
beginning construction on the building.  Comanche and CSP had
worked together on many projects in the past and about 75% to 80% of CSP’s
business came from Comanche.  

Child
Advocates had originally hired an architect to prepare detailed plans and
specifications for the building.  Those plans
and specifications called for a three-foot building pad and a certain quality
of materials to be used in the pad.   Comanche and CSP submitted their bids on the
project based on those plans.

Comanche’s
contract with Child Advocates, however, was later modified because of cost
concerns.  According to Comanche and CSP,
Jeff Nesmith at Child Advocates instructed Comanche to do an “abbreviated”
version of the pad and merely level the site as a result of budget concerns.[1]  Under the terms of the oral agreement between
Comanche and Child Advocates, CSP was to level the building pad and keep track
of the amount of dirt necessary for the project and Child Advocates would
“reimburse” Comanche for the expenses.   

Consistent
with the two companies’ past practices, Comanche and CSP operated pursuant to
an oral agreement and did not have a written contract until after CSP completed
the earthwork on the building pad.  It is
undisputed between Comanche and CSP that they both understood and agreed that
CSP’s work was not supposed to conform to the original plans and
specifications.  Comanche and CSP did not
discuss indemnity or specify a set price at the time of the oral agreement.[2]  Nor does the record show that they discussed
whether their oral agreement was subject to a subsequent written
agreement.  

CSP
completed the earthwork.  On May 21, CSP sent
an invoice to Comanche and on June 24, Comanche cut a check for the amount
invoiced.  On June 25, CSP’s president,
James Stokley, executed a sworn application and certificate for payment in
which he stated that “the Work covered by this Application for Payment has been
completed in accordance with the Contract Documents.”  Before Comanche tendered the check to CSP,
Comanche’s vice-president, Chris Parrack, signed and sent a written
“subcontract agreement” to CSP.  The
subcontract agreement stated that Comanche would provide all of the materials,
equipment, and labor needed for the project’s earthwork “in accordance with the
Drawings and Specifications prepared by Jim Gwen Architects.”  The agreement also required CSP to obtain any
insurance necessary or incidental to the completion of its work and contained
an indemnity clause which read:

7.  [CSP] agrees to indemnify and hold [Comanche]
and [Child Advocates] wholly harmless from any damages, claims, demands or
suits by any person or persons, arising out of or resulting from the execution
of the work provided in this subcontract or occurring in connection therewith,
excluding liability for negligence of [Comanche] or [Child Advocates] except in
connection with general supervision of work performed by [CSP].

 

Finally, the agreement contained a
merger clause stating in capital letters, “ALL NEGOTIATIONS AND AGREEMENTS
PRIOR TO THE DATE OF THIS AGREEMENT NOT INCLUDED HEREIN ARE HEREBY
VOIDED.”  

Stokely
signed the subcontract agreement on behalf of CSP on July 13.  Comanche did not tender payment to CSP until
after Stokely signed the contract. 
Stokley testified in his affidavit that Comanche informed him that “the
only purpose” for the written subcontract was so Comanche ‘had a written
document in its file relating to its payment” of CSP’s invoice.  Both Parrack and Stokley testified that
Comanche typically required CSP to sign a written, form subcontract agreement
before Comanche paid for the work performed. 
Both also testified that these written agreements were generally signed
after CSP completed its work.  Parrack
testified that the form subcontract agreements always included an indemnity
provision of some kind. 

Stokley
testified that he never read the entirety of the form agreements; he typically
only read the terms regarding the price. 
He further testified that the parties had never discussed indemnity
until the issue arose in this dispute and that he does not understand how
indemnity operates. 

Child Advocates sued Comanche over construction problems
discovered after the building was completed and the trial court directed the
parties to arbitrate.   The arbitrator found that “[Comanche] breached
the agreement with Child Advocates to construct the under slab building pad in
accordance with the plans and specifications and Comanche, through its
subcontractor, [CSP], negligently constructed the under slab building pad
resulting in subsequent damage to tangible property of Child Advocates.”  The arbitrator awarded construction costs,
attorney’s fees, prejudgment interest, and arbitration costs for Child
Advocates and against Comanche.  Audubon,
as Comanche’s insurance carrier, paid $296,360 for Comanche’s construction
costs and prejudgment interest damages. 
Audubon subsequently filed this action against Comanche’s subcontractor,
CSP, for contractual indemnity and breach of contract to recover the damages
paid.   

Procedural Background

Audubon and CSP filed cross-motions for traditional summary
judgment.  Audubon contended that it was
entitled to contractual indemnity as a matter of law.  The trial court denied Audubon’s motion.  CSP filed its summary judgment motion two
years after the denial, contending that the indemnity clause was unenforceable
because it was not supported by consideration, among other grounds.  The trial court denied CSP’s motion in August
2009.  Three months later, Audubon filed
its Sixth Amended Petition.  

The trial court set the case for trial on March 9,
2010.  The day before the trial setting,
Audubon non-suited several claims against CSP so that only the indemnity and
breach of contract claims remained.[3]  At the March 9 trial setting, the trial court
requested additional briefing on the indemnity issue.  CSP and Audubon submitted additional briefs,
and the trial court had another hearing on March 19.  At the hearing, the trial court withdrew its 2009
denial of CSP’s traditional summary judgment motion and granted the motion.  Audubon timely appealed the trial court’s
ruling on both summary judgment motions. 


Standard of Review

We review a trial
court’s ruling on a summary judgment de novo. 
Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).  If a trial court grants summary judgment
without specifying the grounds for granting the motion, we must uphold the
trial court’s judgment if any of the grounds are meritorious.  Beverick
v. Koch Power, Inc., 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.]
2005, pet. denied). When, as here, the parties file cross-motions for summary
judgment on overlapping issues,
and the trial court grants one motion and denies the other, we review the summary
judgment evidence supporting both motions and “render the judgment that the
trial court should have rendered.”  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

Under the traditional standard for summary judgment, the movant
has the burden to show that no genuine issue of material fact exists and that
the trial court should grant judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison Cnty. Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  The motion must state the specific grounds
relied upon for summary judgment.  See Tex.
R. Civ. P. 166a(c).  A defendant moving for traditional
summary judgment must conclusively negate at least one essential element of
each of the plaintiff’s causes of action or conclusively establish each element
of an affirmative defense.  When
reviewing a summary judgment motion, we must (1) take as true all evidence
favorable to the nonmovant and (2) indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life Accid. Ins.
Co. v. Knott, 128 S.W.3d
211, 215 (Tex. 2003).  

Valid and Enforceable
Subcontract Agreement

In its first issue,
Audubon contends that the trial court erred in granting CSP’s traditional
summary judgment motion because the subcontract agreement was valid and
enforceable.  CSP asserts that the
subcontract agreement was unenforceable because it had already completed
performance when the parties signed the contract, and therefore, the written
agreement and its additional terms were not supported by consideration.  Audubon responds that CSP’s lack of
consideration defense is barred by the parol evidence rule and merger doctrine
and, alternatively, that the subcontract agreement was supported by
consideration.[4]  

A.      Parol Evidence Rule

Audubon contends that the parol evidence rule and the related
doctrine of merger prevent this court from considering CSP’s lack of
consideration claim because it would require looking outside the four-corners
of the written subcontract agreement.  “The parol evidence rule provides that the
terms of a written contract cannot be contradicted by evidence of an earlier,
inconsistent agreement.”  Baroid Equip., Inc. v. Odeco Drilling, Inc.,
184 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  The application of
the parol evidence rule is a question of law that we review de novo.  DeClaire
v. G & B McIntosh Family Ltd., 260 S.W.3d 34, 45 (Tex. App.—Houston
[1st Dist.] 2008, no pet.).  The rule particularly applies when the
written contract includes a merger clause or similar language.  Baroid
Equip., 184 S.W.3d at 13.

We may consider parol evidence, however, “to show want or
failure of consideration, and to establish the real consideration given for an
instrument.”  DeLuca v. Munzel, 673 S.W.2d 373, 376 (Tex. App.—Houston [1st
Dist.] 1984, writ ref’d n.r.e.).  See also Restatement (Second)
of Contracts §§ 213 cmt. d, 214(d) (1981). We may consider parol evidence to
determine if consideration exists “even though the parties have reduced their
agreement to a writing which appears to be a completely integrated
agreement.”  Restatement (Second) of Contracts §
218(2).  We may also consider parol
evidence to determine whether the parties intended a written agreement as a
memorialization of their agreement (and therefore only had one contract) or a
modification of the prior oral contract (and therefore had two contracts, each
of which needed independent consideration as discussed below).  See id.
at § 210(3) (“Whether an agreement is completely or partially integrated is to
be determined by the court as a question preliminary to determination of a
question of interpretation or to application of the parol evidence rule.”); Mark K. Glasser & Keith A. Rowley, On Parol: The Construction and
Interpretation of Written Agreements and the Role of Extrinsic Evidence in
Contract Litigation, 49 Baylor L.
Rev. 657, 705–707 (1997).

We therefore reject
Audubon’s assertion that we cannot consider parol evidence for the limited
purpose of determining CSP’s lack of consideration defense. 

B.      Consideration

Audubon contends
that it presented evidence showing that the subcontract agreement was in fact
supported by consideration.  Audubon
specifically asserts, among other grounds, that the course of dealing between
the parties demonstrates that the execution of a subsequent written subcontract
agreement was a term of all the oral agreements between the parties through
their many years of collaboration.  

CSP and Audubon disagree
on what the subcontract agreement represents—a modification of the oral agreement
between Comanche and CSP requiring independent consideration or a written
memorialization of the parties’ oral agreement fully contemplated as an
accepted part of their transactions over the years.    If the terms of a subsequent written contract
differ from what the parties intended in their original oral agreement—i.e., if the
written contract modified the agreed upon terms—the written contract requires new
consideration.  Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 228–29 (Tex. 1986); Walden v. Affiliated Computer Servs., 97 S.W.3d 303, 314 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied). 
Whether a contract has been modified depends on the parties’ intentions
and is a question of fact.  Hathaway, 711 S.W.2d at 228–29; Ghidoni v. Stone Oak, Inc., 966 S.W.2d
573, 580–81 (Tex. App.—San Antonio 1998, pet. denied) (holding whether document
constituted modification of prior lease agreement was fact issue properly
presented to jury); Williams v. L.M.S.C.,
Inc., No. 01-03-00924-CV, 2005 WL 2469876, at *6 (Tex. App.—Houston [1st
Dist.] Oct. 6, 2005, pet. denied).  

On the other hand, if
the written contract is merely the parties’ written memorialization of their
oral agreement, or if the other “form” terms are to be included in the written
memorialization based on the parties’ understanding and intent, no separate
consideration is required.  Parties may
enter into an oral contract with the understanding that they will later execute
a formal writing that memorializes their agreement.  See
Foreca, S.A. v. GRD Dev. Co., 758 S.W.2d 744, 745 (Tex. 1988); Murphy v. Seabarge, Ltd., 868 S.W.2d
929, 933–34 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (“Actions may
manifest an intent to be bound to an agreement, even though the parties may
expressly provide a formal contract will be executed in the future.”); Cothron Aviation, Inc. v. Avco Corp.,
843 S.W.2d 260, 263–64 (Tex. App.—Fort Worth 1992, writ denied).  Whether they intend to be bound, with or
without the execution of a final written contract, is normally a question of
fact for the jury.  Foreca,
758 S.W.2d at 745 (quoting A. Corbin, Corbin on Contracts
§ 30 at 97 (1963)).
See also Murphy, 868 S.W.2d at 933–34 (“Whether the parties intended to be bound in the absence
of the execution of a contemplated final written agreement is a question of
fact”); Cothron, 843 S.W.2d at 263–64 (“Parties rarely
express a direct intention as to the moment when
they conceive themselves to be bound by a contract . . . .  As a consequence intention is usually an
inference to be drawn by the fact finder from other facts and circumstances in
evidence.”) (quoting Simmons & Simmons
Constr. Co. v. REA, 286 S.W.2d 415, 417 (Tex. 1995)).
The parties may enter into an oral agreement regarding certain preliminary
terms, but intend to be bound only if they reach an agreement on a final
written document.  Foreca, 758 S.W.2d at 745. 
The parties’ intent to be bound, or lack thereof, determines whether a
contract existed before the writing.  See also Murphy, 868 S.W.2d at 933–34.

If Comanche and CSP
intended to be bound by their oral agreement and that agreement did not
contemplate the terms included in the parties’ subsequent written agreement,
the written subcontract modified the oral agreement and is not supported by
consideration.  Alternatively, if the
parties entered into an oral agreement regarding certain preliminary terms but
intended to be bound only if they reached an agreement on a final written
document, or if the parties intended that their agreement incorporated the
terms in the “form” subcontract historically used by the parties, the written
subcontract was their only agreement and is supported by consideration.  

The summary
judgment record does not establish the parties’ intentions as a matter of
law.  Comanche and CSP had an extensive
course of dealing in that they worked together for over 10 years with Comanche supplying
75% to 80% of CSP’s business at the time of the Child Advocates’ project.  Representatives of both CSP and Comanche
testified in their respective depositions that, before the Child Advocates
construction project, the parties routinely executed a written subcontract
agreement after CSP completed performance. 
They used the form contract many times before the Child Advocates’
project and for years after the project. 
Parrack, as Comanche’s vice-president,
further testified that the subcontract written agreements included indemnity
provisions similar to the one at issue here.[5]  CSP did not dispute this evidence. 

As the summary
judgment movant, CSP had the burden of conclusively showing that the written
subcontract constituted a modification requiring independent
consideration.  It did not satisfy that
burden.  The parties’ regular practice of
executing written contracts containing indemnity provisions after CSP’s
performance is some evidence that, at the time of their oral agreement, the
parties intended that they would memorialize their agreement in a written
contract containing an indemnity provision, and therefore no additional
consideration was necessary.  The only
evidence CSP advanced was the uncontested testimony that the parties did not
discuss the indemnity provision at the time of the oral contract.  But that evidence alone does not conclusively prove that, at the time
of the oral agreement, the parties intended that their oral agreement would be
binding and did not intend that it include the “form” contract terms adopted by
the parties in previous transactions. CSP also did not conclusively prove the
parties’ subjective intentions, and the circumstances here are not so
compelling that we can conclude that intent as a matter of law.  CSP therefore did not prove that it was entitled
to judgment as a matter of law on the grounds of lack of consideration.

We sustain
Audubon’s first issue regarding lack of consideration.

C.      Fair Notice 

In the remainder of
its first issue, Audubon contends that the trial court erred in granting CSP’s
summary judgment motion because the indemnity clause is valid and
enforceable.  CSP responds that the fair
notice requirements bar Audubon’s claim and that the language of the provision
excludes indemnity for claims by Child Advocates.[6]  CSP further asserts that Audubon must
demonstrate fault on CSP’s part to trigger indemnity under the language of this
provision and no legal or factual basis exists to find CSP at fault.

1.       Was Fair Notice Properly Before the Trial
Court?

Before we address
the merits of CSP’s fair notice contention, we must first address whether this
ground for summary judgment was before the trial court. This ground for summary
judgment is not contained in CSP’s summary judgment motion.  It is, however, contained in its response to
Audubon’s summary judgment motion.  Fair
notice also appears in its supplemental brief on indemnity filed three days
before the final summary judgment hearing. 
Audubon responded to this contention in its own supplemental brief filed
two days before the summary judgment hearing. 
Over six months later, two briefs were filed by the parties in response
to the trial court’s request at the pretrial conference on March 9.

We conclude that
the issue of fair notice was properly before the trial court.  Pursuant to Texas Rule of Civil Procedure 166,
a trial court may dispose of legal issues during a pretrial conference.  Walden, 97 S.W.3d at 322. 
See also Para-Chem S., Inc.
v. Sandstone Products, Inc., No. 01-06-01073-CV, 2009 WL 276507 at *17
(Tex. App.—Houston [1st Dist.] Feb. 5, 2009, pet. denied) (“A trial court may
summarily dispose of issues at a Rule 166 pretrial conference when the trial
court determines that no fact issues remain and the issues may be determined as
a matter of law.”).  Because
the fair notice ground was raised as part of the pretrial conference, we apply
the standard of review for directed verdicts to this basis for the trial
court’s ruling.  See Walden, 97 S.W.3d at 324; Para-Chem,
2009 WL 276507, at
*17.

2.       Does Fair Notice Apply?  

Audubon
contends that the fair notice requirements do not apply to Audubon’s indemnity
claim against CSP to recover for the Child Advocates’ successful breach of
contract claim.  Alternatively, Audubon
contends that the indemnity clause satisfies the fair notice requirements.  

“An indemnity
agreement is a promise to safeguard or hold the indemnitee harmless against
either existing and/or future loss liability” and provides the indemnitee with
a cause of action to recover against the indemnitor.  Dresser
Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993).  Most contract provisions involve a certain
degree of risk-shifting, but some provisions involve such an “extraordinary
shifting of risk” that courts impose additional fair notice requirements to
make the provision enforceable.  Green Int’l, Inc. v. Solis, 951 S.W.2d
384, 387 (Tex. 1997); Dresser, 853
S.W.2d at 508; Amtech Elevator Serv. Co.
v. CSFB 1998-P1 Buffalo Speedway Office Ltd., 248 S.W.3d 373, 377 (Tex.
App.—Houston [1st Dist.] 2007, no pet.). 
The fair notice requirements are (1) the express negligence doctrine and
(2) the conspicuousness requirement.  Amtech Elevator Serv., 248 S.W.3d at
377.  The express negligence doctrine
dictates that a party’s intent to be released or indemnified from its own
future negligence must be clear and unambiguous.  Green
Int’l, 951 S.W.2d at 386.  The
conspicuousness requirement means that “something must appear on the face of
the [contract] to attract the attention of a reasonable person.”  Storage
& Processors, Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004) (quoting Dresser, 853 S.W.2d at 508)). 

The fair notice
requirements apply when “one party exculpates itself from its own future
negligence.”  Green Int’l, 951 S.W.2d at 387; DDD
Energy, Inc. v. Veritas DGC Land, Inc., 60 S.W.3d 880, 885 (Tex.
App.—Houston [14th Dist.] 2001, no pet.) (holding fair notice does not apply
“where an indemnitee is seeking indemnification from claims not based on the
negligence of the indemnitee.”).  In DDD Energy Inc., the indemnity clause
required each contracting party to indemnify the other for its individual
negligence resulting from claims by a third party.  DDD
Energy, 60 S.W.3d at 884.  Nothing in
the indemnity clause shifted responsibility for DDD Energy’s negligence onto
the other contracting party.  Id. 
The court of appeals affirmed summary judgment and held that the fair
notice requirements identified in Dresser
are limited to claims for indemnity based on the indemnitee’s own
negligence.  Id. at 885.  See also English v. BGP Int’l, Inc., 174 S.W.3d 366, 375 (Tex. App.—Houston
[14th Dist.] 2005, no pet.).

The indemnity
provision here does not require CSP to indemnify Comanche for Comanche’s
negligence, except for damages resulting from Comanche’s negligent supervision
of CSP.  The fair notice requirements,
therefore, do not apply to Audubon’s indemnity claim arising from the
arbitrator’s findings of negligence and breach of contract against Comanche
based on CSP’s negligence.

CSP contends that
nothing in the record supports a finding that it was negligent, and therefore
nothing justifies shifting any portion of the arbitration award to CSP.  We disagree with CSP’s contention.  The arbitrator’s award states that Comanche breached its
agreement with Child Advocates “to construct the under slab building pad in
accordance with the plans and specifications and Comanche, through its
subcontractor, [CSP], negligently constructed the under slab building pad . . .”  The arbitrator did not find any
negligence by Comanche in the construction of the building pad or designate any
findings of negligent supervision.  

Because fair notice is limited to when a contracting party
shifts its own negligence onto another party, CSP has not proven that the fair
notice requirements bar Audubon’s indemnity claim as a matter of law.  See DDD Energy, 60 S.W.3d at 885.  Fair notice, therefore, does not bar the
enforceability of the indemnity provision.

          We
sustain the Audubon’s first issue.  

Audubon’s Summary Judgment

In its fourth
issue, Audubon contends that the trial court erred in denying its traditional
summary judgment motion because it proved it was entitled to indemnity as a
matter of law.  Audubon further asserts
that it conclusively negated CSP’s affirmative defenses raised in response to
Audubon’s summary judgment motion.  

As stated above,
CSP failed to prove conclusively that Audubon was not entitled to indemnity
under the terms of the subcontract agreement. 
But the same fact issue that undermines CSP’s summary judgment claim
undermines Audubon’s as well.  While CSP
did not establish a modification as a matter of law, we cannot say that Audubon
proved the parties intended to be bound only by the terms of the written
subcontract agreement.   For its own
summary judgment motion, Audubon bore the burden of proof.  But just as CSP offered no evidence of the
parties’ intentions, Audubon also offered no evidence of their intentions
beyond the parties’ general course of dealing.  The evidence that the parties had never
discussed indemnity at any time and CSP never knew of the existence of the
indemnity provisions undercuts Audubon’s contention that the parties agreed to
these terms in advance due to their regular practices.  In other words, a fact issue exists on
whether the subcontract agreement modifies or memorializes the parties’ oral
agreement and summary judgment was improper for either party.  The trial court properly denied Audubon’s
summary judgment motion, and rendition on Audubon’s motion is
inappropriate.  Because Audubon did not
satisfy its summary judgment burden, we need not address CSP’s affirmative
defenses in response.

We overrule
Audubon’s fourth issue.

Breach of Contract for Failure
to Obtain Insurance

          In
its third issue, Audubon contends the trial court erred in granting CSP’s
summary judgment motion because the motion did not address Audubon’s breach of
contract claim against CSP for failure to obtain liability insurance as
required by the subcontract agreement. 
CSP responds by reiterating its contention that the subcontract agreement
was not supported by consideration and, therefore, was not valid and
enforceable.  Alternatively, CSP asserts
that the issue of liability insurance is moot because the CSP has no obligation
to indemnify Audubon.  

          When
CSP filed its motion for summary judgment, Audubon’s live pleading, its fourth
amended petition, alleged that CSP breached the subcontract agreement to
“secure insurance in favor of Comanche
. . .” (emphasis added).  CSP asserted
two arguments in its summary judgment that could have defeated Audubon’s
claims: (1) the subcontract agreement was not enforceable because it was not
supported by consideration and (2) the plain language of the subcontract
agreement did not require CSP to obtain insurance covering Comanche
specifically.  After CSP moved for
summary judgment, but more than 21 days before the court heard the motion on
March 19, Audubon filed its sixth amended petition in which it rephrased this
breach of contract claim to state:

Additionally,
at least one of CSP’s insurance carriers has asserted a coverage defense in
this case; to the extent that the defense is valid and CSP does not have
coverage to protect itself from the property damage claims asserted in this
case, CSP breached its contract with Comanche.

 

CSP did not amend its summary
judgment motion to address this change in Audubon’s pleading.  

We conclude that
CSP’s summary judgment addressed Audubon’s breach of contract on the issue of
insurance by challenging the entire subcontract agreement based on lack of
consideration.  As discussed above,
summary judgment was improper based on this ground, and CSP did not
conclusively negate its indemnity obligation to Audubon.  Summary judgment was, therefore, improper
regarding Audubon’s breach of contract claim for failure to obtain insurance.[7]

We sustain
Audubon’s third issue.  

Conclusion

          We
sustain Audubon’s first and third issues on appeal and hold that the trial
court improperly granted CSP’s summary judgment on the basis of lack of
consideration and lack of a valid and enforceable indemnity provision based on
the fair notice requirements.  Because
summary judgment was improper, we need not address Audubon’s remaining
contention regarding its objections to CSP’s summary judgment evidence.  We overrule Audubon’s fourth issue and hold
that a fact issue exists on whether the written subcontract agreement required
new consideration, and the trial court properly denied Audubon’s summary
judgment motion.  

          We reverse the judgment of the trial
court and remand for further proceedings.

 

 

 

Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.











[1]           Nesmith
did not testify at the arbitration between Comanche and Child Advocates.  The executive director of Child Advocates
testified that she was unaware of such an agreement and took the position that
Nesmith had no authority to enter into such an agreement.

 





[2]
          The parties describe their
agreement as a “cost-plus” arrangement, but there is no evidence that they
reached an agreement on a percentage to add to the CSP’s costs.





[3]
          Audubon non-suited claims for
breach of express warranty, breach of implied warranty, and common law
indemnity.   





[4]
          We address Audubon’s contentions
regarding the parol evidence rule because it raised the issue in its
brief.  At oral argument, however,
Audubon conceded that the parol evidence rule does not bar extrinsic evidence
to show lack of consideration. 





[5]
          The language of the indemnity
provision may have changed over the years, but Parrack’s testimony is evidence
that the written subcontract agreements between the parties routinely contained
indemnity provisions.  





[6]
          We reject CSP’s contention that
the indemnity provision excludes indemnity for Comanche based on claims by
Child Advocates.  The indemnity provision
when it states that “[CSP] agrees to indemnify and hold [Comanche] and [Child
Advocates] wholly harmless from any damages, claims, demands, or suits by any
person or persons . . .”  We read the
“and” between Comanche and Child Advocates as instead extending the indemnity
protection to both rather than excluding indemnity claims between the two.  





[7]
          Audubon also asserts it raised a
breach of contract for failure to use the correct quality of dirt for the
building pad.  Audubon raised this issue
as a breach of express warranty claim, which it subsequently non-suited before
the trial court’s summary judgment hearing. 
Therefore, the contention was not properly raised before the trial
court.